## A. J. HARRIS v. STATE.

No. A-4577.   Opinion Filed Sept. 2, 1924.

(228 Pac. 525.)

(Syllabus.)

1. **Witnesses—Cross-Examination—Discretion as to Scope.** In cross-examination of witnesses, a large discretion is vested in the trial court. Ordinarily the details of conduct of hostility of a person, not a party to the prosecution, and not a witness against the defendant, should not be gone into on cross-examination, as to do so would open a collateral investigation, presenting innumerable issues having no direct bearing upon the case.

2. **Rape—Conviction on Sufficient Uncorroborated Testimony of Prosecutrix.** A conviction for rape may stand alone upon the uncorroborated testimony of the complaining witness, where the same is sufficient to establish the offense, and is not of such a contradictory and unsatisfactory nature, or so thoroughly impeached that this court may say that such testimony is clearly unworthy of belief.

Appeal from District Court, Le Flore County; E. F. Lester, Judge.

A. J. Harris was convicted of rape in the first degree, and he appeals. Affirmed.

See, also, 21 Okla. Cr. 382, 208 Pac. 1118.

This is an appeal from the judgment of the district court of Le Flore county, state of Oklahoma, wherein the plaintiff in error, hereinafter referred to as defendant, was charged with the crime of rape in the first degree. The crime was alleged to have been committed on the 1st day of May, 1921, in said county and state. On a trial of the case the jury found defendant guilty as charged, and fixed his punishment at imprisonment in the state penitentiary for a period of 15 years. The court pronounced judgment and sentence in accordance with the verdict of the jury, and from such judgment and sentence defendant appeals to this court.

Hulene Tubbs, the complaining witness, lived with her father and mother on a farm in Le Flore county. At the time of the alleged outrage she was about 12 years old; a girl unusually developed physically. The defendant is her stepgrandfather, being the second husband of her father's mother. He is a man 68 years old. He also lived on a farm in Le Flore county about 2½ miles distant from the home of the complaining witness. Complaining witness and her father and mother lived on a farm belonging to one  W. I. Long. The complaining witness testified that she had had intercourse with her stepgrandfather on two different occasions. The particular time charged in this case occurred on or about the 1st of May, 1921. She testified that she went over to the home of defendant to stay all night, and did stay all night, visiting her grandmother, and that the next morning, after the milking was done, her stepgrandfather, the defendant, asked her to help him drive the cows to the pasture; that they took the cows out about 8 or 8:30. They took them through what witness called the first pasture and turned them through a gate into the second pasture; that the first pasture had considerable underbrush, shrubbery, and dead trees in it; that the defendant took complaining witness out to the pasture to an old log, and there had intercourse with her; that, after having the intercourse, they both went to the house; and that she spent the rest of the day there.

The other time that complaining witness tells of having intercourse with defendant was a number of months previous to the intercourse just related. Complaining witness did not tell her mother about the matter until about a week or so before defendant was arrested, which was February, 1922, about 8 months having lapsed before she told any one. For several months prior to the time she told her mother, she had been sick and had been flooding, and a doctor was

called. He made an examination of complaining witness. It was then that she told her mother of the actions of defendant.

The defense was that defendant did not commit the crime. He admitted the trip to the pasture, but said that on the way back from the pasture he met one Johnny Justice, and stopped and talked with him, and that the little girl went on to the house. In this defendant is apparently corroborated by the testimony of Justice. She denies them meeting Johnny Justice at the time, or of having seen him. Some testimony was introduced to show that the pasture was bounded by three roads, and that there was not nearly so much brush and trees and logs in the pasture as complaining witness said there was.

Counsel for defendant, in his brief, raises two questions: First, the insufficiency of the evidence; and, second, that the court erred in refusing certain testimony which he tendered in evidence.

C. C. Williams, for plaintiff in error.

George F. Short, Atty. Gen., and J. Roy Orr, Asst. Atty. Gen., for the State.

MATSON, P. J. (after stating the facts as above). We proceed first to consider the second of the above assigned errors. During the direct examination of the defendant the following occurred:

"Q. Mr. Harris, what have been the feelings between you and Mr. Tubbs, as far as being friendly or unfriendly, for the past few years? A. Well, we would be friendly and then get unfriendly. His mother said he had some Indian in him and—

"Q. Just state whether you have been friendly or unfriendly. A. Well, it has been unfriendly most of the time.

"Q. If I understand, you married Mr. Tubbs' mother? A. Yes, sir.

"Q. How long have you been married to her, Hr. Harris? A. Well, I won't say whether it was 12 years this last August, or 13 years; I ain't sure.

"Q. During this time, as you stated, the feelings have been bad and unfriendly towards Mr. Tubbs, and he towards you? A. Him towards me. He left home when we married.

"Mr. Bobb: That is objected to—any details.

"The Court: Sustained.

"Mr. Williams: We don't care to insist on it.

"The Court: Procced.

"Q. Mr. Harris, what has been your feelings, as to being friendly or unfriendly, as between you and W. I. Long? A. Me and Mr. Long has never been friends, I will say that, from the first year I ever knew him.

"Q. What was the occasion when you all had bad feelings?

"Mr. Bobb: That is objected to, your honor.

"The Court: Objections sustained.

"Mr. Williams: All right. The defendant expects to prove that a few years ago a school meeting was held in Lathim schoolhouse, and that at that time Mr. A. J. Harris suggested at this board meeting that, before they build a new schoolhouse that they should have a deed to the property, and at that time W. I. Long owned the property upon which the building was to be erected, and that he and A. J. Harris had cross words and exchanged harsh words between each other with reference to the building of the schoolhouse without a deed to the property, and that ever since that time they have not been on speaking or friendly terms."

It is contended that the trial court erred in excluding the proffered testimony of the defendant as to the details of

the alleged difficulty and hostile feelings between the defendant and one W. I. Long. W. I. Long was not a witness against the defendant. The purpose of this testimony, therefore, was not in the nature of impeachment; but it is contended by counsel for the defendant that, inasmuch as the complaining witness, Hulene Tubbs, made no disclosure of this alleged act of sexual intercourse by the defendant with her to any of her relatives until about 9 months after the act had occurred, and for the further reason that her father, Ruben Tubbs, was during all of that time a tenant on a farm owned by the said W. I. Long, and for the further reason that it is disclosed by the record that the said W. I. Long was present in the Tubbs home at the time the physician made a vaginal examination of the complaining witness, just prior to the institution of this prosecution, and for the further reason that it is disclosed by the record that the said W. I. Long brought the county attorney to the home of Tubbs for the purpose of a consultation with the complaining witness, and that immediately thereafter this prosecution was begun, it was competent and material for the defendant, not only to show a state of ill feeling on the part of the said Long against him, but also it was material that the jury have the circumstances in detail which formed the commencement of this state of ill feeling.

There is very little evidence that W. I. Long was in fact the instigator of this prosecution. All that was offered to be proved by the defendant was that a few years before at a certain school meeting this defendant suggested at a meeting of the school board that before they built a new schoolhouse the board ought to have a deed to the property, and further that it was proposed to build the schoolhouse on land at that time owned by the said W. I. Long, and that this suggestion on the part of the defendant resulted in cross and

harsh words being exchanged between him and the said
W. I. Long, and that ever since that time the defendant and
Long had not been on speaking or friendly terms. Counsel
for the defendant did not offer to prove what these cross
and harsh words were. Whether they were in the nature of
threats against the defendant, or had any direct or even in-
ferential bearing on the reasons for the instigation of this
prosecution, does not appear from the offer to prove. The
trial court permitted the defendant to testify to the fact of
the unfriendly feeling between him and Long. Under the
circumstances of this case, and in view of the fact that in
matters of this kind a large discretion must be left to the
trial court, we reach the conclusion that a showing of such
alleged unfriendly feeling was all that should have been per-
mitted.

Ordinarily the details of the conduct of the hostility of a
person not a party to the prosecution, not a witness against
the defendant, should not be gone into, as to do so would
open a collateral investigation, presenting innumerable is-
sues having no direct bearing upon the case. These issues
ofttimes cause unfair prejudices to arise in the minds of the
jurors, and distract their attention from the matter properly
before them for investigation. Especially is that true in this
case, where there is practically no preliminary showing what-
ever that the instigation of this prosecution was probably the
result of the hostility alleged to have existed between the
defendant and W. I. Long, the landlord of the father of the
complaining witness. As we view the record, outside of the
testimony of the defendant himself, W. I. Long did noth-
ing but that any neighbor and friend would have done for
another neighbor and friend under similar circumstances,
especially as the record here discloses where one friend acted
at the solicitation of the other.

It is also contended that the evidence is insufficient to sustain this conviction. The conviction is based largely upon the uncorroborated evidence of the complaining witness, a girl about 12 years of age. There is, however, some slight corroboration by the attending physician, such as the rupture of the hymen, and as to other physical facts surrounding the premature physical development of the complaining witness for one of her age. The attending physician testified that she had a physical development of a girl of 15 years of age, rather than one of 12.

The complaining witness made no disclosure of this outrage until several months after its occurrence. This was a circumstance, no doubt, the jury considered. She attempted to explain it by stating that she was ashamed to tell her mother about it, and only did so after repeated importunings on the part of the mother.

That a conviction for rape may stand alone upon the uncorroborated testimony of the complaining witness is established by the former holdings of this court. Reeves v. Territory, 2 Okla. Cr. 351, 101 Pac. 1039; Brenton v. Territory, 15 Okla. 6, 78 Pac. 83, 6 Ann. Cas. 769; Johnson v. State, 5 Okla. Cr. 4, 112 Pac. 760. On the other hand, this court has held that a conviction for rape, based on the uncorroborated testimony of the complaining witness, where her testimony is contradictory and unsatisfactory, and the story told by her is inherently improbable, will not be permitted to stand. Allen v. State, 10 Okla. Cr. 55, 134 Pac. 91; Douglas v. State, 19 Okla. Cr. 257, 199 Pac. 927.

The story here told is improbable only as such stories are always improbable, as shocking to our finer sensibilities of right and morality. It is hard for any one to believe that such crimes may be committed and are committed in this enlightened age of Christian teaching and example. In that

sense the commission of any crime may be said to be improbable. Crime is repugnant to our ideas of right living and just treatment of others. However, the law reports are cumbered with cases of convictions affirmed of statutory rape, where the accused was a man of advanced years and the complaining witness a girl of tender years. It is a matter to be deplored that such instances are not infrequent.

The improbability of the complaining witness' story must arise, therefore, from something other than the likelihood of the improbability of the commission of crimes of this character. The testimony of the complaining witness must be of such a contradictory and unsatisfactory nature, or else such witness must be so thoroughly impeached, that this court may say that such testimony is clearly unworthy of belief and insufficient in law to sustain the conviction.

We are not permitted to weigh the evidence as between witnesses of apparently equal credibility. That function belongs properly to the jury and to the trial court. There the witnesses are observed. Their manner of testifying, their candor and demeanor, and numerous other matters which the printed page cannot and does not disclose, are open to the close scrutiny of the jury and the trial judge.

Therefore this court will not disturb a judgment of conviction because of the alleged insufficiency of the evidence, merely because the evidence is conflicting, if there is evidence in the record which, if believed, proves the crime. The decisions to this effect are numerous and need not be again cited.

The fact that the complaining witness made no disclosure of this crime until 8 or 9 months after its commission is, of course, a circumstance that would ordinarily render her story highly improbable. While she was a girl of premature

physical development for one of her age, it is equally apparent, we think, that she was of immature mental development. She was not as far advanced in school as girls of her age ordinarily are, and her testimony does not bear the earmarks of that of a coached witness or of a designing female, who had maturely reflected upon the probability of a fabricated prosecution.

The defendant was the stepgrandfather of the complaining witness, and the record discloses that on other occasions subsequent to the time of this alleged crime he was in company with the complaining witness. Had the complaining witness and her parents, therefore, desired to frame up a prosecution against this defendant, the opportunity was presented to them to make the time of the commission of the offense much nearer to the time of its disclosure, and thereby in that respect relieve the complaining witness' story of that element of improbability. That this was not done may be advanced as an argument that the child's story is not a fabrication, with as much degree of success as it may be contended that the story itself is improbable, because the disclosure of the crime was not made for several months. We cannot say, therefore, that the testimony of the complaining witness is inherently improbable, nor does it bear the earmarks of having been fabricated.

After carefully considering the entire transcript of the evidence in this case, we find no good reason for disturbing this judgment because of insufficient evidence to sustain it.

The judgment is affirmed.

BESSEY and DOYLE, JJ., concur.