## EMMETT MALONE v. STATE.

No. A-6422.    Opinion Filed May 12, 1928.
(267 Pac. 486.)

Sam H. Crossland, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J. The plaintiff in error, hereinafter referred to as defendant, was, in the district court of Tulsa county, convicted under an information filed in said court January 26, 1926, the charging part of which is as follows:

"That Emmett Malone on the 10th day of April, A. D. 1925, in Tulsa county, state of Oklahoma, and within the jurisdiction of this court, did unlawfully, willfully and feloniously carnally know and have sexual intercourse with one Mildred Murry, a female person and not the wife of him the said Emmett Malone; the said Mildred Murry being then and there under the age of 15 years, to wit, 14 years of age."

Motion for new trial was filed and overruled and exceptions saved; judgment and sentence was entered

April 24, 1926, sentencing the defendant to serve a term of one year in the penitentiary of Oklahoma. To reverse the judgment an appeal by case-made was perfected and filed in this court.

The testimony on behalf of the state is in substance as follows:

Mildred Murry testified:

She was attending Whittier school in April, 1925. That she knew the defendant, Emmett Malone; had known him for more than a year. She did not know he was a married man. That she was 14 years of age. She saw the defendant at the Whittier school the last of March or the first of April, 1925. When school was out he was out near the gate, and she got in the car and went up the road. "He acted all right and never said a word like he was bad or anything. He never at any time made any representations to me. The second time he taken me out the Dawson road a mile or two and had intercourse with me. Before he had that I asked him where we were going, and he said he was going to drive off the road a piece. He said, "We are going to have an intercourse,' and I knew that I could not defend myself."

On cross-examination the witness testified:.

That she met the defendant at Joe Hanner's dance; "I danced one set; I did not meet defendant's wife at the dance. The first time the defendant came to the schoolhouse was about the 1st of March, 1925. He was in a Ford coupe the first time, and the next time he came in a Studebaker. I understood all about what the word 'intercourse' meant. I was not 16 years old at the time he had intercourse with me. I did not tell Mrs. Leona Walker, Clyde Dunham, and Mrs. Templeton that I was 16 years of age. I had intercourse with the defendant four or five times. It was about the 3d of August, 1925, when I told my mother. They found out, and I told them about it. Templeton had been writing me letters in Kansas to my cousins out in Kansas, and my aunt got hold of one of the letters. Mother read

it, and they asked me about it. I told her all about it. Yes, sir; something happened from this intercourse. It was a disease. I don't know whether Malone gave it to me or Mr. Templeton. I went to the county attorney's office and asked Mr. Luther Lane, the assistant county attorney, to dismiss the case. I told him there was nothing to it, and I don't want to proceed with it. Emmett Malone wasn't guilty as alleged in the information. I never had any conversation with Josephine Hanner and Clura Murry and tell them Emmett Malone did not have sexual intercourse with me. I never talked with them about the case. No, sir; I did not talk to my sister-in-law and Joe Hanner. I never made a statement at Josephine's house that if I had to tell about having intercourse with anybody I wouldn't know who to lay it on to."

On redirect examination the witness stated:

That the conversation she had with the assistant county attorney, that Mr. and Mrs. Clyde Durner was present. "I made a statement to Mr. Lane and said Emmett Malone wasn't guilty, but the reason I made it was his sister and her husband came out to the schoolhouse and told me that Emmett's wife said she had all the papers ready to send me to a reform school if I did not get them to release this case. That is the reason I made this statement. The case was reinstated on motion of my parents and me, too. The last time I had intercourse with the defendant was some time in May; I don't know the date. I have had intercourse with Templeton. This venereal disease developed after I had intercourse with Templeton, and I can't say whether Templeton or Malone; it was one of the two. It was about the 28th day of July when I had intercourse with Templeton. It was in December, 1925, when I first noticed I had the venereal disease; had intercourse with Templeton twice. Templeton and Malone are the only two men I had intercourse with."

Dr. Malcom McKellar testified that he was a physician and surgeon, and was during the year 1925; that the latter part of the year he made an examination of Mildred Murry; that the hymen had been ruptured,

but he could not tell how long or the cause of the rupture; the most common thing of a rupture is intercourse.

Dan Murry and Mary Murry, called as witnesses, each testified that Mildred Murry was born August 3, 1910. Anna Barnes testified to having seen the defendant come to the Whittier school; she did not know how many times, but in answer to direct question from the county attorney she stated she had seen him more than once.

The defendant in his own behalf was called, and testified in substance as follows:

His name was G. E. Malone; he knew Mildred Murry; "met her at a dance at Albert Hanner's about a year ago; Mr. and Mrs. Walker, Mr. and Mrs. Templeton, and my wife attended the dance; other people attended; Mrs. Hanner or Mrs. Conway one introduced me to Mildred Murry; I was sitting by my wife with my baby in my arms when I was introduced to her; I never had intercourse with Mildred Murry; I went by Whittier school one time, but not for the purpose of picking her up; I was on my way to Bartlesville, and as I passed the schoolhouse she and her little sister got in the car and I drove them up near their home and put them out and went on to Bartlesville. I never picked her up again, nor did I ever carry her out on the road anywhere and have sexual intercourse with her at this time she stated; I never did have intercourse with her."

On cross-examination he stated:

He was never with her at any other time excepting at the dances, and "I did not pick her up and drive her home; I was never with her at Muskogee; nor was I ever with her at Sapulpa or Beggs; never did register with her. I knew they lived quite a little ways from the school, and I had plenty of room in the car to give them a lift; her little sister was with her; I had been introduced to her at Mr. Hanner's dance and I knew they lived over there; the parties that were present when I was introduced to her at Hanner's were Mr. and

Mrs. Templeton, Mr. and Mrs. Walker, Mr. and Mrs. Tennis, and Mr. Hanner and Josephine, his wife, and my wife and baby; and Mrs. Murry was there with Mildred. I remember where I met Mildred because it was at the dance; I believe it was Mr. Hanner or Mrs. Hanner that introduced me to her; the deed I was going after was to be recorded at Bartlesville; I went on to Bartlesville after I had taken Mildred home; the reason I did not take her to the house was she said this was plenty far enough; I never took her off the Dawson road, the hard-surface road to a dirt road back away out in the woods, nor did I ever give her any money to go away anywhere; nor did I tell her to go to Arkansas or any other place."

Mrs. William Walker testified:

That she was at the dance at Josephine and Albert Hanner's and that Mildred Murry was there; Emmett's wife was introduced to Mildred that night; she was introduced as Mrs. Malone; "Emmett held the baby; my daughter Lenora was there that night; Mildred stated that night in my presence that she was 16 years of age."

And on cross-examination witness stated who was present at the Hanner home and who heard Mildred make the statement that she was 16 years of age.

Mrs. Templeton was called as a witness in behalf of defendant and testified in substance that Emmett Malone was her brother; that she was a sister of Mrs. Walker; that she knew Mildred Murry; that she attended a dance at Albert and Josephine Hanner's about August, 1924; Mildred stated that night in my presence that she was 16 years old.

Evelyn Durner was called as a witness and testified:

That she was a sister of the defendant, Emmett Malone; that she attended the dance at Albert and Josephine Hanner's about a year ago last August; Mildred Murry attended the dance; Mrs. Walker also was there that time; Mildred stated that she was 16 years

old; Emmett Malone, wife and baby, also was at the dance that night; Mildred met all of the parties that were there; Mildred played with Emmett's baby; it was in August, 1924; "I remember her statement because she was so small I could not believe she was 16."

Josephine Hanner, called as a witness, stated:

"There was a dance at my house, and Emmett Malone and his wife attended; Mildred Murry also attended; this dance was in August, 1924; we also had one in April, last spring; Mildred mentioned her age at the first dance; she stated she was 16 years old; there was just two lots between where they lived and my home; Clura Murry and I was at Mildred's home, and Mildred stated she had been intimate with several men; that there was at least a half a dozen."

On cross-examination witness stated:

"Mildred mentioned no names; I was at the dance and heard Mildred say she was 16 years of age; Emmett Malone was not in the kitchen at the time she made this statement."

Mr. A. A. Wells, called as a witness, testified as to the previous good character of the defendant.

The defendant was recalled in his own behalf and denied that he had ever had any venereal disease, and also denied that he had ever owned or driven a Studebaker.

Dr. C. C. Noblock was called, and testified in substance that he made a thorough examination of the defendant and that there was no traces shown in the blood of the defendant that he had been afflicted with any venereal disease.

Albert Hanner, called on behalf of defendant, stated that there was a party at his house in the summer of 1924 and spring of 1925; that Mildred Murry attended one or both of them; he would not be positive

as to whether or not she attended both; Emmett Malone was there, and Emmett's sisters.

Evelyn Durner, called as a witness, testified for the defendant in substance:

That she was in the county attorney's office some time last year when Mildred Murry told Luther Lane, one of the assistant county attorneys, that Emmett Malone was not guilty and wanted to dismiss the case; "I met her up there; I did not tell her or any one in her presence that if she did not dismiss the case we had papers all ready to send her to a reform school; Mildred stated her mother was going to send her to a reform school if she did not bring the charge against Emmett Malone; I went to the Whittier school to see the girl; I did not threaten her or say one word to her; I went to see what she would say about it; I did not tell her if she did not come in and fix it up I would send her to the reform school; I asked her what about it and if she thought Emmett was guilty, and she said 'No,' and I said. 'Then why don't you go down and dismiss it?' I don't remember the exact words she told Luther Lane, but she told him to drop the charge; and he asked her why, and she said because he was not guilty; she said it was another fellow; she did not name the other fellow in my presence; she told me it was some high school boys."

Clyde Durner, called as a witness, stated:

He knew Mildred Murry just by seeing her; "I saw her at a dance once; I also saw her in the county attorney's office; she stated that Emmett wasn't guilty; she stated that some other boys took her out of town and she did not feel like sticking somebody who wasn't guilty; she was prosecuting Emmett Malone because her father and mother threatened to send her to the reform school if she did not."

On cross-examination witness stated:

"I don't know Luther Lane when I see him; he might be a young man; she was talking to two or three different ones when I was there; they were talking to

a young fellow and an old like fellow in the county attorney's office. I went to see her to see if Emmett Malone was guilty, and she said 'No.' She said she wanted to drop the charge against him. I went out to the schoolhouse, where she signed a statement desiring to dismiss the case."

The defendant has assigned twelve errors alleged to have been committed by the trial court. In his brief he urges as grounds for reversal his second assignment. The first error assigned by the defendant is as follows:

"That the court erred in overruling plaintiff in error's motion for a new trial. To which ruling of the court plaintiff in error at the time excepted and still excepts."

Under the first assignment of error may be grouped and considered all of the errors urged, as his motion for a new trial included them all. The defendant contends that the trial court erred in admitting against the defendant incompetent and immaterial evidence, but nowhere in the brief does he set out in full or in substance the testimony alleged to have been improperly admitted by the court, only making reference in his brief to pages of the case-made; an examination of the pages of the case-made referred to by the defendant fails to disclose any incompetent and irrelevant testimony permitted by the court to go to the jury over the objection of the defendant.

Defendant urges in his brief that the verdict of the jury was arrived at as a result of passion and prejudice against the plaintiff in error. The record does not disclose there was any bias or prejudice on behalf of any of the jurors, and the verdict of the jury shows there was none, as the jury assessed the minimum punishment provided by the statute.

Defendant urges that the case should be reversed for the reason that the prosecuting witness Mildred

Murry was contradicted on several points by other witnesses. The witness was corroborated by her father and mother as to her age at the time the alleged cohabitation took place. She was corroborated partly by the defendant—at least to the extent that after he met the prosecuting witness at the Hanner dance he had on one occasion driven by the schoolhouse and took her in his car and drove her down near her home. The witness is further corroborated by Anna Barnes, who attended Whittier school and who testified she saw the defendant on more than one occasion drive away from the school with the prosecuting witness in his car. Anna Barnes testified that the first time he came to the school he drove a Ford coupe, and after that a Studebaker.

It is true the record discloses that the prosecuting witness went to the county attorney's office and asked Luther Lane, one of the assistants, to dismiss the case. The witness explaining why she did this, claiming that it was reported to her that the wife of the defendant had papers ready and was going to try to send her to the reform school. It is denied by witnesses for the defendant that defendant's wife made any such statements, or that any one informed the prosecuting witness that the wife of the defendant made the statements. It is clear from the record, however, that an effort was being made to have the prosecution stopped, as the record discloses that parties went to the school where the prosecuting witness was attending school and got her to sign a statement asking that the case be dismissed and from there went to the law office of a Mr. Wilson; then to the county attorney's office. The record further discloses that when she signed the statement she made some statement as to what would probably be done to her by her parents if she asked the case be dismissed.

It is strongly urged by the defendant that the pros-

ecuting witness had been impeached as to her age and as to the statement as to the number of parties she had had intercourse with, and that for that reason the case should be reversed. It is true the prosecuting witness made no complaint against the defendant and perhaps never would have made complaint but for the fact that a letter written by some one to the prosecuting witness fell into the hands of her aunt, and the aunt sent the letter on to the mother of Mildred Murry, and when the mother inquired of her regarding these facts she told what had taken place.

It is also urged by the defendant that in the trial of the case the court made unfair and improper remarks in the presence of the jury which would materially prejudice the rights of the defendant. We have carefully examined the record, and while there are some statements of the court that perhaps were not necessary for the court to make, in each instance it was in explanation to questions of the counsel for the defendant, and invited by questions by the counsel of defendant. The court should refrain from allowing his actions or remarks to indicate to the jury his opinion on the credibility or character of any witness, or the guilt or innocence of the defendant. In this case we fail to find where any remark of the court in any way whatever indicated to the jury his opinion on the validity or invalidity of the testimony offered, or the credibility or character of the witnesses, or the guilt or innocence of the defendant. Shields v. State, 32 Okla. Cr. 344, 240 P. 661.

It is also contended by the defendant that the evidence is insufficient to sustain a conviction; that the trial court erred in not directing a verdict of not guilty at the conclusion of the case. The evidence is conflicting. The testimony of the prosecutrix is positive as to

the acts of intercourse. The testimony of the defendant is equally positive in denial thereof. Therefore it was for the jury to determine the weight of the testimony and the credibility of the respective witnesses. This court has repeatedly held that a conviction for rape may stand on the uncorroborated testimony of the prosecutrix. In this case conviction is not based alone on uncorroborated testimony. There are many facts in the record corroborating the testimony of the prosecutrix and showing the guilt of the accused.

A settled rule of this court is that where there is any evidence in the case from which the jury could reasonably believe that the defendant was guilty of the offense of which he is convicted, the verdict of the jury will not be disturbed on the ground of the insufficiency of the evidence.

An examination of the record discloses that the defendant had a fair and impartial trial; that no bias or prejudice is shown against him by the jury in returning its verdict; that the court did not commit error in his remarks during the trial of the case; and that the law was properly submitted to the jury, and that no prejudicial errors were committed.

The judgment and sentence is affirmed.

DOYLE, P. J., and EDWARDS, J., concur.