## CHARLES KILPATRICK v. STATE.

No. A-10048.   July 22, 1942.
(128 P. 2d 246.)

J. W. Burrow, of Gage, and C. B. Leedy, of Arnett, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Charles Kilpatrick, was charged in the district court of Woodward county with the crime of rape in the first degree, committed by force upon one Sylvia Webber; was tried, convicted, and sentenced to serve 15 years in the State Penitentiary, and has appealed.

The offense is alleged to have occurred on the night of March 13, 1939, while the defendant and his brother, Earl Kilpatrick, were out riding with Sylvia Webber, Glenna Endsley, and others.

Charles Kilpatrick was first charged and convicted of the crime of rape committed on Glenna Endsley, and Earl Kilpatrick was convicted of forcibly raping Sylvia Webber. The convictions in those two cases were appealed to this court; the appeal of Earl Kilpatrick was dismissed. Earl Kilpatrick v. State, 71 Okla. Cr. 125, 109 P. 2d 514. The conviction of Charles Kilpatrick was reversed and remanded for a new trial. Charles Kilpatrick v. State, 71 Okla. Cr. 129, 109 P. 2d 516.

After the Charles Kilpatrick case was remanded to the district court a new information charging rape of Sylvia Webber was filed and the defendant was tried upon that information instead of the charge involving the alleged rape of Glenna Endsley.

The chief contention presented on behalf of the defendant is that the evidence is insufficient to support a conviction for rape or any other offense.

The proof of the state was substantially as follows:

Earl Kilpatrick, age 22, and the defendant, Charles Kilpatrick, age 20, lived at Woodward. Sylvia Webber, age 19, Glenna Endsley, age 19, Jean Matthews, age 15, Irene Wyckoff, age 15, and Robert Smith, age 16, lived at Mooreland. The two Kilpatrick brothers were acquainted with Robert Smith. On the evening of March

13, 1939, Charles and Earl Kilpatrick drove to the town of Mooreland in a coupe automobile. When they arrived there they saw Robert Smith, Jean Matthews, and Irene Wyckoff on the street. They talked to Smith and he and Jean and Irene got in the rumble seat of the automobile and they drove to the home of Sylvia Webber and Glenna Endsley to see whether Irene could get a date for the Kilpatrick brothers.

The testimony of Sylvia Webber and Glenna Endsley is substantially the same. They testified that they had creamed their faces and prepared for bed when Irene Wyckoff came to their room and asked them to go for a ride with two boys whom she called Tex and Curley. The girls first said no, but after Irene insisted that they go they agreed to go to the car and see who the boys were and ride up town for a coke. Each of the girls testified that they had on only a house dress, a pair of panties and shoes. When they arrived at the car one of the girls asked that the light be turned on so that they could see the boys. Some conversation followed and the girls testified that they finally agreed to go up town with the defendant and his brother to get a coke, with the understanding that they would be returned home soon. That they then got into the automobile. Charles Kilpatrick was driving, Glenna Endsley sat in the middle and Sylvia Webber sat on the lap of Earl Kilpatrick. There was no formal introduction, but Glenna Endsley told the two boys her name and that of Sylvia Webber. The boys drove through the town of Mooreland and turned out on a country road. After driving two or three miles the automobile was stopped. The Kilpatrick boys and Sylvia and Glenna got out of the car to take a walk. They were near the Eiler home. Sylvia Webber testified that as she was walking down the road with Earl Kilpatrick

she stooped over to pick up a straw and Earl Kilpatrick grabbed her and forcibly and against her will had sexual intercourse with her at that place. Glenna Endsley stated that the defendant, Charles Kilpatrick, forcibly and against her will had sexual intercourse with her, also, close to the place where Earl Kilpatrick attacked Sylvia Webber. The girls screamed and a light was turned on in the Eiler home which scared them and they all ran back to the automobile and drove on toward the river. Jean Matthews, Irene Wyckoff, and Robert Smith remained in the rumble seat of the coupe, but the Kilpatrick boys and Sylvia and Glenna got out of the automobile again after it had stopped near the river. Sylvia Webber and Glenna Endsley each testified to two other acts of sexual intercourse committed on them by Earl and Charles Kilpatrick at that place; Earl allegedly committed the acts on Sylvia Webber and the defendant committed the acts on Glenna Endsley. Each of the girls testified that they used their utmost resistance but were slapped, scratched, choked, and threatened to where their resistance was overcome. After returning to the automobile Sylvia Webber testified that Charles Kilpatrick grabbed her and dragged her several yards and stood her up against a tree and forcibly had sexual intercourse with her while they were standing against the tree. Glenna Endsley testified that Earl Kilpatrick had sexual intercourse with her on the fender of the automobile, which made four acts of sexual intercourse allegedly committed by each of the two brothers on these two girls in the course of about three and one-half hours.

It was this alleged act of sexual intercourse committed by the defendant on Sylvia Webber, and not the acts allegedly committed on Glenna Endsley, with which he now stands convicted in the case herein.

After these final acts of intercourse were committed the girls were taken to their home at Mooreland. They went into the Webber home and notified the brother of Sylvia Webber as to what had occurred and he in turn notified the officers, who arrested the defendant and his brother at their home in Woodward the next day.

Two medical doctors made a physical examination of the prosecutrix on March 14, 1939. They testified that their examination showed that she had "scratches all over the body, legs, thighs and arms; occasional scratches on the back. The hymen was ruptured, bleeding some, very tender, no membrane, spermatozoa negative. On the 15th day they brought her back again for additional examination and the right eye was black, with bruises, externally to the right eye and some scratches had shown up on the right of the neck." The examination showed that the rupture of the hymen was recent.

Jean Matthews and Robert Smith testified as to the trip being taken by all of them and that they remained in the rumble seat of the car while the four parties got out for a walk. They testified that at the first stop they heard a girl scream and shortly thereafter all four of them came running back to the car. That the Kilpatrick brothers scolded the girls for making so much noise and attracting attention.

Jean Matthews testified that after the Kilpatrick brothers and the two girls had returned to the automobile, after being gone an hour or so at the river, Sylvia Webber was standing at the front of the car near a headlight where she was grabbed by Charles Kilpatrick. That the defendant pulled her away from the automobile while Sylvia was struggling to prevent it and that he dragged her away in the darkness. Neither she nor Robert Smith

saw any of the alleged acts of sexual intercourse committed.

The officers testified that they made an investigation the next day and found where persons had lain in the sand and indications of a struggle. However, this was found at the places where the intercourse was admitted and not where the alleged crime herein was committed.

Charles Kilpatrick testified in his own defense. He admitted all of the occurrences substantially as related by the girls up to the time the automobile was first stopped. He testified that one of the girls in the front seat was quarreling with one of the younger girls in the rumble seat and that they finally stopped the car. That while the car was stopped either Syliva or Glenna suggested that they get out and take a walk, which was done. That after they had walked from the car he "propositioned" Glenna and she agreed, but before anything could be done the light was switched on at the Eiler home and they were afraid of being discovered so they returned to the automobile. That later, while they were down near the river, he did have sexual intercourse with Glenna Endsley but that it was not forcibly and against her will, but with her consent, and that she acceded readily and stated: "Wait 'till I take off my pants, so we can do it right." He specifically denied having any sexual intercourse with Sylvia Webber.

The testimony of the prosecutrix concerning the acts of sexual intercourse allegedly committed by Earl Kilpatrick goes into great detail in which she relates how she was struck, choked, scratched, and bruised by Earl Kilpatrick seeking to overcome her resistance in order to commit these acts. The fact that the doctor, upon his examination the following day, found bruises and scratches

is not necessarily corroboration of the testimony of the prosecutrix that the defendant, Charles Kilpatrick, had sexual intercourse with her, as the condition which the doctor found, under the testimony of the prosecutrix, could have been wholly caused by Earl Kilpatrick. Earl Kilpatrick is now serving a 15-year term in the State Penitentiary because of these alleged acts.

The testimony of the prosecutrix concerning the alleged act of intercourse committed by this defendant with her is not very conclusive. She testified that the act was committed while they were standing by a tree and that she remembered very little of what occurred.

The prosecutrix weighed 126 pounds and was of the same approximate age as defendant. While there is corroboration of her story concerning the manner in which the defendant grabbed her while she was standing in front of the automobile and dragged her away in the darkness, the facts which she related with reference to the actual commission of the act of sexual intercourse are highly improbable and practically impossible considering the size and strength of the two parties. The prosecutrix' testimony concerning the actual commission of the act of sexual intercourse with defendant is as follows:

"Q. He throwed you down, or did you lay down? A. He didn't throw me down. Q. Then you laid down? A. No sir, I didn't. Q. How did you get down? You didn't have it standing up did you? A. Yes, he pinned me against a tree and said he was going to take his belt off and tie me. Q. Did he do that? A. No, but he pinned by arms back and held me. Q. Which arm? A. I don't know. Q. That is all he did, was it? A. What do you mean? Q. I am asking you what took place, I want to know what was done? That is all you remember that took place is it? A, No, that is not all I remember. Q. What do you remember, then? A. (No answer) Q. During that act of intercourse—that act of intercourse—your

panties were not taken off were they? A. No, sir, but they were all torn and bloody and all my underclothing were torn. Q. Now Earl Kilpatrick did that in his three acts of intercourse with you, didn't he? A. I imagine Charlie did a little of it too. Q. Some part of them were not torn yet when Earl Kilpatrick got through you mean? A. All I know is they were torn and bloody."

It is well-settled that where the testimony of the prosecutrix is inherently improbable and almost incredible there must be corroboration by other evidence as to the principal facts to sustain a conviction. Morris v. State, 9 Okla. Cr. 241, 131 P. 731; Allen v. State, 10 Okla. Cr. 55, 134 P. 91.

The trial court correctly included in his charge to the jury an instruction on the included offense of assault with intent to commit rape and also assault and battery. We doubt the sufficiency of the evidence to sustain a conviction for rape forcibly committed on the person of Sylvia Webber, but the evidence is sufficient to sustain a conviction for assault with intent to commit rape.

Jean Matthews testified that she saw defendant struggling with prosecutrix and jerking her away from her hold to the headlight of the automobile and pulling her away in the darkness. With this testimony and the other circumstances in evidence we feel that the jury would have been justified in returning a verdict of guilty of the included offense of assault with intent to commit rape.

At the time of the former appeal of this defendant, Kilpatrick v. State, supra, the writer of this opinion was not very favorably impressed with the story related by the two young ladies who were allegedly attacked. The fact that they left their home dressed as they were, with their hair in curlers and faces creamed for bed, to go riding with two strangers whom they had never met, and

the other attendant circumstances, including the fact that the Kilpatrick boys and these two girls were of the same approximate age, and the large number of times it is alleged the acts of sexual intercourse were forcibly committed, seemed highly improbable, and this court reversed the conviction in the former case for a new trial. But a different jury in the home county of these parties has again heard the evidence and assessed a verdict of guilty for rape in the first degree. This jury had the advantage of seeing the parties on the witness stand and of observing their demeanor. For that reason, in a case which is wholly a question of fact, we hestitate to reverse the same where there is a dispute in the testimony.

This court has the power, when it considers it necessary in the furtherance of justice, to modify the sentence which has been imposed. Section 3204, O. S. 1931, 22 O. S. 1941 § 1066. Under this statute the Criminal Court of Appeals has the power to reduce the judgment for first degree rape to an included offense and fix appropriate punishment. Cunningham v. State, 55 Okla. Cr. 67, 24 P. 2d 1013; Lebo v. State, 40 Okla. Cr. 116, 267 P. 288; Plaster v. State, 45 Okla. Cr. 452, 283 P. 805.

It is therefore ordered that the conviction of the defendant of the crime of rape in the first degree be modified to that of the included offense of assault with intent to commit rape, and that the punishment assessed the defendant be reduced from 15 years in the State Penitentiary to a term of two years in the State Penitentiary, and the judgment and sentence of the district court of Woodward county as thus modified is affirmed.

It is so ordered.

BAREFOOT, P. J., and DOYLE, J., concur.