ARTHUR H. MAXWELL v. STATE.

No. A-10273.    April 12, 1944.

(148 P. 2d 214.)

Mauntel & Spellman, of Alva, Loofbourrow & Dale, of Beaver, and Hale Loofbourrow, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Lonnie B. Ison, Co. Atty., of Buffalo, for defendant in error.

BAREFOOT, J. Defendant, Arthur H. Maxwell, was charged in the district court of Harper county with the crime of rape in the first degree, was tried, convicted and sentenced to serve a term of 20 years in the State Reformatory at Granite, and has appealed.

It is first contended that the evidence is insufficient to support the judgment and sentence, for the reason that the testimony of the prosecutrix was not corroborated; and, second, that the court erred in refusing to give certain requested instructions, and in giving certain other instructions.

It was charged in the information that defendant had committed intercourse with his ten-year-old daughter, Norma Lee Maxwell, on the 23rd day of January, 1942, and she testified to other acts prior to this time and continuing for a period of more than two years. The specific act relied upon by the state was committed on the morning of January 23, 1942, when the defendant went into the bedroom of the prosecutrix. Her mother was cooking breakfast in an adjoining room. A door between the rooms

was closed, but not locked. She testified that the relation between her and her father had started while they lived in Darrozutte, Tex., and had continued since they came to Harper county, two years prior to the date alleged in the information. That during all this time she had not told her mother for the reason she was afraid her father would kill them, as he had threatened to do. The first time she told her mother was on the 24th day of January, 1942, after the last act as alleged in the information on January 23, 1942. The reason for telling her then was that her mother heard a conversation between her and her father, and came into the room and asked them about it. She then told her mother.

The evidence further revealed that while defendant was the father of Norma Lee, he had not married her mother until Norma Lee was five years of age. He had a wife from whom he secured a divorce, and she had a husband who died.

The evidence of the prosecutrix was clear and convincing. She did not contradict herself in any way. That part of her evidence which might be considered as against her was that her mother failed to observe or know anything was wrong over the period of more than two years that this had been going on, and the fact that she failed to tell her mother, or anyone else during that time.

A short time after she told her mother, the mother took her to a doctor for an examination, and the day defendant was arrested and the warrant of arrest was served on him, he was also served with a summons in a divorce action filed by his wife. His bank account was tied up, and later was delivered to his wife.

The testimony of the prosecutrix and two doctors, Dr. Joe Duer and Dr. M. H. Newman, constituted the evidence

in chief of the state. Certain rebuttal evidence was offered by the state, to which reference will be made after reviewing the evidence of the defendant.

Dr. Joe Duer for the state testified that in the first part of February, 1942, the county attorney and her mother brought the prosecutrix to his office in Woodward for an examination. He testified, in part:

"A. On further examination, from my external examination, I found that the hymen was ruptured, and only fragments of it left; however, there were no recent lacerations of any type, and the vaginal canal was diptheric and enlarged until I could have easily made insertion of two fingers on examination. Q. Did you make an insertion of the finger? A. Yes, sir. Q. Now Doctor, from that insertion that you made, what would you say with reference to the possibility of the insertion of a normal man's organ? A. It would be very possible. Q. From that examination, external and internal, would you tell this jury that she had been entered with some instrument, or something to cause that hymen to be ruptured and torn away, and the other conditions that you found there? A. Yes, sir, it would have had to be absolutely necessary. Q. Could you tell, Doctor, from that examination, and your experience, about how long it had been since the hymen had been ruptured? A. No, the only thing I could say would be from the fact that there were no recent lacerations or anything of that type, and it had been and would necessarily have to be sometime past. Q. As I understand you, then, it had not healed? A. It had healed; judging on the matter of time, however, there would be no point that would help in the matter of time. I don't think that she would have had that much dilatation unless it had been some matter of dilatation over several times past. One time wouldn't have done that. Q. Then, as I understand you, from your experience you tell the court and jury that the condition you found her in, this dilatation, or stretching of the private organ, had been going on over some period of time? A. It would have had to be, yes, sir. Q. Now did you take

any slides or smears, from examination from the vaginal tract? A. Yes, sir. Q. What did that disclose? A. The mother was particularly interested in whether there might be a probability of vaginal discharge or venereal disease. I found none other than finding that there was such a d's-charge in the vaginal tract such as would be normally found in an adult woman, and not what you would ordinarily find in a child of that age. Q. Now, Doctor, from your experience and profession, what is the condition of the normal youngster, ten years old, who has lived normally and not been entered or had her privates penetrated? A. Normally, a ten-year-old girl would have had a small labia, and there would be no inflammation or redness there, and the hymen should have been intact; there should be no more opening in the hymen than would have admitted a common lead pencil. If the hymen had been ruptured recently you would find the vaginal canal would have a soreness, or infected sort of condition, if the rupture was recent."

Dr. M. H. Newman of Shattuck had examined the prosecutrix on March 19, 1942. He testified:

"Q. What condition did you find there? A. I found the labia to be slightly enlarged, the labia was somewhat larger than normally found in a child of her age. There were no pubic hairs, and I found a slight irritation of the labia minora. Q. Is that a normal condition usually found in a child of ten years, Doctor? A. Well, her genitals appeared to be a little larger than the average girl of that age. Q. Did you make an examination of the internal parts of the private organs, Doctor? A. Yes, sir. Q. What were the conditions there that you found? A. I made a bimanual examination, by that I mean a two-finger examination. Q. Did you insert two fingers? A. Yes, sir. Q. Just hold the two fingers up to the jury you inserted. (Doctor holds up forefinger and middle finger of right hand.) Q. Those are the two fingers you inserted? A. Yes, sir. Q. Was there any reaction on the part of the child, or any particular pain that you noticed? A. Not much. Q. What would you say would be the normal size opening

in a ten-year-old child, one of her age and size, if there hadn't been any abnormal development? A. State that question again, please, sir. Q. I say, what would you say would be the normal sized opening in a ten-year-old child, one of her age and size, if there had not been an abnormal development of the private parts? A. My experience is that you can rarely insert more than the tip of the finger, if that. Q. Would that be the equivalent to a lead pencil? A. Practically so, yes, sir. Q. Did you notice that this child was developed other than the pubic hairs—were the breasts overdeveloped for a child of her age and size? A. The breasts were somewhat enlarged. Q. Would that development of the private organs, such as hers, ordinarily cause enlargement of the breasts? A. They are associated. Q. Did you make a slide, or smear, of the vaginal tract? A. There was no vaginal discharge and I didn't make one. Q. Did that indicate to you that there was nothing wrong? A. That was not necessary. I examined her with a speculum, that is an instrument we examine the vaginal tract with, and there was no discharge on that."

The defendant testified, and denied ever having had sexual relations with the prosecutrix at any time. He testified that his brother, Fred Maxwell, was present at his home, on the night of January 23, 1942, and had been staying there for some time assisting him in his work as a pipe line walker for the Phillips Petroleum Company, a job he had held for 11 years. That his brother slept in the same bed with prosecutrix, Norma Lee, on that night, and that he was not in her room. His brother, Fred Maxwell, corroborated this evidence, testifying that it was a cold night and they did not have enough cover, and that he slept with Norma Lee at the suggestion of her mother. It was the contention of defendant that his wife had become estranged and that she was in love with another person. Evidence was introduced to show this, and of her conduct toward this party. It is unnecessary to relate this testimony. Defendant offered a number of character

witnesses. The state in rebuttal offered a number of witnesses who contradicted the witnesses of defendant on a number of minor issues. Also witnesses who testified to statements made by Fred Maxwell at the time of the arrest of defendant, contrary to the evidence given by him at the trial. Four letters written by defendant to his wife while he was in jail were introduced. In none of these letters did he admit his guilt of the crime charged, but they contained statements from which the jury could have drawn an inference of his guilt.

With the issues as above presented, the jury returned a verdict of guilty, leaving the punishment to be assessed by the court, which was 20 years in the State Reformatory at Granite.

The main question here involved has been considered by this court in many cases. In the late case of Weston v. State, 77 Okla. Cr. 51, 138 P. 2d 553, many of the more important cases have been cited and reviewed, including the early case of Sowers v. Territory, 6 Okla. 436, 50 P. 257, from the Territorial court. We shall not again review these cases, but shall only state some of the rules adhered to, and make application of them to the facts in the case at bar.

From an early date this court has adopted the rule that one may be convicted upon the uncorroborated testimony of the prosecutrix. Morris v. State, 9 Okla. Cr. 241, 131 P. 731; Douglas v. State, 19 Okla. Cr. 257, 199 P. 927; Ferbrache v. State, 21 Okla. Cr. 256, 206 P. 617; Harris v. State, 27 Okla. Cr. 405, 228 P. 525; Day v. State, 29 Okla. Cr. 49, 232 P. 122.

But we have limited this rule with an exception which is as well established as the rule itself. It is that the testimony of the prosecutrix in a rape case must be clear

and convincing, and where it bears upon its face inherent evidence of improbability, is contradictory, inconsistent or unreasonable, it will be held as insufficient, and under these circumstances must be corroborated to the extent of making it sufficient. Alcorn v. State, 70 Okla. Cr. 386, 106 P. 2d 838; Williams v. State, 61 Okla. Cr. 296, 68 P. 2d 530; Kilpatrick v. State, 75 Okla. Cr. 28, 128 P. 2d 246; Gordon v. State, 75 Okla. Cr. 356, 131 P. 2d 503; Weeden v. State, 73 Okla. Cr. 258, 120 P. 2d 379; Burtt v. State, 64 Okla. Cr. 68, 77 P. 2d 580.

This rule has more often been applied in cases where the prosecutrix is a child of tender years and more susceptible of coming under the influence of others, or through fear, threats, coercion or duress. Self v. State, 62 Okla. Cr. 208, 70 P. 2d 1083; Woodruff v. State, 74 Okla. Cr. 289, 125 P. 2d 211.

In the Weston Case, supra, reference is made to the Sowers Case, supra, which is based upon the reasoning of Sir Matthew Hale, one of the greatest judges of criminal law of all times. The general rule, and the one recognized and followed by this court, is that where there is any evidence to support the verdict, or where the evidence is conflicting, the appellate court will not examine the record for the purpose of ascertaining or determining the weight of such evidence and the verdict approved by the trial judge will be permitted to stand. But in cases of this character, an exception is recognized to the general rule above stated, and that exception is that in rape cases the appellate court will make a careful examination of the whole record to the end that it may justify the sentence imposed. This exception is based upon the firm foundation announced by Sir Matthew Hale when he said:

"It is true that rape is a most detestable crime, and therefore severely to be punished, with death; but it must

be remembered that it is an accusation easily to be made, and hard to be proved, and harder to be defended by the party accused, though never so innocent."

In the Weston Case, the judgment and sentence was reversed. We there said:

"This is what we mean when we say that cases of this character should not be decided upon technicalities, based upon a fixed policy that the verdict of the jury is final and absolutely correct on every proposition of fact. The doctrine that one may be convicted on the uncorroborated testimony of the prosecutrix has an exception to the rule that is as well founded as the rule itself, and that is that where her testimony is contradictory, uncertain, improbable or she has been impeached, her testimony should then be corroborated. And this corroboration should be of such dignity as to give it weight with the jury upon the question that the actual crime has been committed. It should not be such slight circumstances as to leave the court and jury to guess or speculate that the crime has been committed and that the defendant is guilty. Many cases of this nature that come before this court for review are of such character that there can not but be a doubt as to the guilt of the defendant, and the least action upon the part of the court or the slightest incompetent evidence causes the jury to return a verdict of guilty.

"The conviction for first degree rape carries with it a minimum punishment of fifteen years in the penitentiary, and a maximum punishment of death or life imprisonment. Certainly there is reason for the rule that has been so long adhered to by this court that close scrutiny will be given to the evidence before a conviction will be permitted to stand.

"In the past few years numerous rape cases have been affirmed by this court: Roberts v. State, 31 Okla. Cr. 103, 237 P. 148; Lane v. State, 48 Okla. Cr. 84, 289 P. 357; Lynch v. State, 42 Okla. Cr. 415, 276 P. 501; Fowler v. State, 42 Okla. Cr. 300, 275 P. 655; Malone v. State, 40 Okla. Cr. 102, 267 P. 486; Allen v. State, 35 Okla. Cr. 64,

248 P. 655; Harris v. State, 27 Okla. Cr. 405, 228 P. 525; Varner v. State, 69 Okla. Cr. 294, 102 P. 2d 615. Others have been reversed: Morris v. State, 9 Okla. Cr. 241, 131 P. 731; Ferbrache v. State, 21 Okla. Cr. 256, 206 P. 617; Douglas v. State, 19 Okla. Cr. 257, 199 P. 927; Davidson v. State, 57 Okla. Cr. 188, 46 P. 2d 572; Johnson v. State, 52 Okla. Cr. 397, 5 P. 2d 772; Dawes v. State, 34 Okla. Cr. 225, 246 P. 482; Woodruff v. State, 74 Okla. Cr. 289, 125 P. 2d 211; Miller v. State, 65 Okla. Cr. 26, 82 P. 2d 317; Williams v. State, 61 Okla. Cr. 396, 68 P. 2d 530; Kilpatrick v. State [75 Okla. Cr. 28] 128 P. 2d 246; Coppage v. State, 76 Okla. Cr. 428, 137 P. 2d 797.

"We realize the disadvantage the trial courts are put to in the trial of this class of cases. There is generally strong feelings in the community by reason of the nature of the crime, and often of the persons involved. These charges are often the outgrowth of alleged attacks upon children of tender age. The facts are often given wide publicity in the local communities. If a verdict of guilty is rendered by the jury, the only relief that can be given by the trial court is the granting of a new trial at a great expense to the county. In the appellate court we have an opportunity to survey the whole record, after it has been reviewed and briefed by attorneys for both the State and the defendant. It is no pleasant task to reverse a rape case, and it is no pleasant memory to send a man to the penitentiary even for a minimum of fifteen years when there is grave doubt of his guilt, and by evidence of one whom the laws require to be corroborated, and the corroboration is not sufficient. But our sworn duty demands that the laws be followed, and that justice shall prevail."

With the sound principles of law as above stated, and as followed by this court since its existence with few exceptions, where the general rule of sustaining the verdict and judgment, when there was any evidence to support it, has been applied to cases of this character, we now consider its application to the facts as they exist in the instant case.

Here the prosecutrix was ten years of age, and her testimony was that her father began being intimate with her when she was eight years of age, and while they lived at Darrozutte, Tex., and prior to the time the family moved to Oklahoma. That this continued after they came to Oklahoma, and that the last time was on January 23, 1942, which was the date alleged in the information, and upon which the state relied for a conviction of the defendant. We have carefully read and reread her testimony. It shows unusual keenness for a child of her age. Under a long and careful cross-examination, there is no contradiction, no inconsistency, and no unreasonableness, and it does not bear upon its face any inherent evidence of improbability. She at no time ever made any statement contrary to the evidence given upon the witness stand. She at no time ever claimed that anyone else had been intimate with her. There was no attempt to impeach her in any way. She related as consistent a statement as appears in any case we have examined in connection with this case. The only weakness in her testimony that might be considered is the fact that she did not relate what had happened to her mother, or anyone else through the years that she said it had been going on, and that her mother did not know of it; and the further fact that her mother had during this time not observed anything about her clothing or person to detect this crime. These inferences, together with the evidence of the defendant denying any illicit relationship with the prosecutrix, and the testimony of his brother, Fred Maxwell, as above related, would require that this court, in justice to the defendant, apply the exception to the general rule of law as above announced, that there should be evidence of corroboration of the prosecutrix in this case. Under this statement, was she corroborated? We think so. The evidence of

Doctor Duer and Doctor Newman has been quoted. It is unnecessary to requote it. Taking into consideration her evidence as above stated, the testimony of the two doctors strongly corroborates her testimony. If their testimony is true, there can be no question that some person had been intimate with the prosecutrix, and there was not the slightest proof it was other than the defendant. The four letters written by the defendant to his wife, while he was confined in jail, while not admitting guilt outright, would be considered as strongly corroborating the evidence of the prosecutrix. It is unnecessary to quote from them. The attempt of defendant to establish disloyalty on the part of his wife, or a desire on her part to have him sent to the penitentiary, or the making of false charges against him, was almost entirely disproved, and the letters written by him so indicate.

Defendant offered two requested instructions. The court gave one and refused the other. For this reason it is contended the case should be reversed. The requested instruction refused was as follows:

"You are further instructed that in this case the prosecution relies for a conviction upon the testimony of Norma Lee Maxwell, the prosecuting witness, of about ten (10) years of age, and no other witness was called by the prosecution to testify directly to the time and place or circumstances of the alleged crime, and you are instructed in cases where the state relies on the uncorroborated testimony of the prosecutrix, unsupported by other evidence, and where the prosecutrix is of the tender age of ten (10) years and where no outcry has ever been made by the prosecutrix until some time after the occurrences of numerous acts of sexual intercourse, that in such cases you should view such testimony with great caution, since the evidence discloses that the prosecutrix for the entire period within which said acts of alleged intercourse took place,

said child was under the care and in the home of the mother and father."

In the first place this requested instruction assumes that there was no evidence which corroborates the testimony of the prosecutrix, which, by the statement heretofore made, is not a fact. The other portion of the requested instruction has to do with the duty of the court to instruct the jury that the testimony of the prosecutrix should be viewed with great caution. There is somewhat of a conflict in the authorities upon this proposition, but the weight of authority and the best-reasoned cases sustain the proposition that it is not necessary to give an instruction of this character when the general instructions inform the jury that the defendant is presumed to be innocent and that he may not be found guilty unless the jury is convinced of his guilt beyond a reasonable doubt; and the general charge as to the credibility of the witness and the right to disregard the testimony of any witness who may have sworn falsely to any material fact.

In addition to these general instructions, the court submitted a requested instruction of defendant with reference to the action of the wife of defendant in desiring to secure a divorce, and inducing the prosecutrix to testify against the defendant, that she might secure a divorce and possession of the two children. The court instructed the jury that this evidence should be considered and given such weight and credit as to them seemed justified.

In 130 A. L. R. p. 1489 et seq. an annotation is given citing and quoting from the cases involving the question of the duty of the court to give a cautionary instruction in cases of this character. See, also, 60 A. L. R. p. 1134 et seq.

A careful examination of the cases generally reveals that where there is sufficient evidence to corroborate the

defendant, even where corroboration is held to be necessary, it is not error to refuse an instruction of this character. It has even been held that the giving or refusal of cautionary instructions lies within the discretion of the trial court, in view of the character of the evidence. State v. Trusty, 122 Iowa, 82, 97 N. W. 989; State v. Brooks, 181 Iowa, 874, 165 N. W. 194; State v. Loomer, 105 Kan. 410, 184 P. 723.

One of the best reasoned cases we have examined is the case of Doyle v. State, from the Supreme Court of Florida. In discussing this case, 130 A. L. R. 1492, it is said:

"Thus, in Doyle v. State (1897), 39 Fla. 155, 22 So. 272, 63 Am. St. Rep. 159, (a jurisdiction permitting conviction of rape upon the uncorroborated testimony of the prosecutrix) it was held that the trial court properly refused, in a prosecution for rape in which the only evidence was the uncorroborated testimony of the prosecutrix, an instruction that 'this is an accusation easy to make, and hard to be defended by the accused, though he be never so innocent, and hence the law is that you should receive with more than ordinary doubt and suspicion the evidence of the prosecutrix,' upon the ground that it announced matters of argument merely and not principles of law, the court stating that 'it is not a rule of law . . . that the attention of the jury be specially directed to the difficulty growing out of the usual circumstances of the crime, in defending against rape; nor is it a rule of law that rape is accusation easy to make, and hard to be defended by an accused, though he be never so innocent,' in accordance with the view that 'instructions of this nature are merely statements of the conclusions of the judicial mind from experience in the trial of this class of offenses rather than enunciations of principles of law,' and that 'the oft repeated observation of Lord Hale, included in the [questioned] instruction was entirely proper by way of argument to the jury, but not as an independent instruction of

law from the court.' And the instruction was held properly refused because, in addition, it in effect told the jury that as a matter of law the defendant could not be convicted upon the uncorroborated testimony of the prosecutrix, the reason assigned being that the applicable rule of law was that there existed in the jurisdiction 'no law limiting the powers of the jury to convict on the uncorroborated testimony of the prosecutrix,' the court observing: 'As without the testimony of the prosecutrix no conviction could have been had in this case, and the court charged the jury that they must give defendant the benefit of all reasonable doubts, it is apparent that had the court given this instruction, the whole controversy would have been resolved into this proposition; the defendant is entitled to the benefit of all reasonable doubts; his guilt is proven only by the prosecutrix: her testimony must be received with extraordinary doubt and suspicion, therefore defendant is entitled to a verdict. If in any case it is proper for the court to instruct the jury that they should scrutinize the testimony of the prosecutrix with caution, no authority can be found to sustain the proposition that such testimony must, as a matter of law, be received with more than ordinary doubt and suspicion.' "

In the case of People v. Garrett, 27 Cal. App. 2d 249, 81 P. 2d 241, 243, one of the leading cases cited as supporting the rule that it is the duty of the court to give cautionary instructions, it is said:

"A careful reading of the cases which we have just mentioned leads to the conclusion that where there is corroborative evidence, it is not prejudicial error for the court to refuse to give a cautionary instruction."

From our statement of the rules that have been announced by this court in cases of this character, and the facts as they exist here, we are of the opinion that the court did not err in refusing to give the requested instruction as above set forth. People v. Vaughan, 131 Cal. App. 265, 21 P. 2d 438; People v. Harrison, 14 Cal. App. 545,

112 P. 733; State v. Lightheart, 153 Minn. 40, 139 N. W. 408; State v. Patchen, 37 Wash. 24, 79 P. 479; Richardson v. State, 99 Tex. Cr. R. 514, 270 S. W. 854.

Finding no error in the record, we are of the opinion that the judgment of the district court of Harper county should be affirmed. It is so ordered.

JONES, P. J., concurs. DOYLE, J., not participating.