THE STATE OF KANSAS v. J. WILLIAM HOSKINSON.

No. 15,781.    (96 Pac. 138.)

SYLLABUS BY THE COURT.

1. STATUTORY RAPE — *Information.* An information charging that the defendant did unlawfully and feloniously commit rape upon a female person under the age of sixteen years by carnally knowing her, giving her name and age, is sufficient, although the word "unlawfully" does not appear in immediate connection with the word "carnally" as it appears in the statute.

2. ———— *Evidence—Complaints of Injured Person.* The rule

admitting in evidence in trials for rape the complaints of the injured person concerning the alleged offense upon her is ordinarily limited to the fact that such complaints were made, the details being excluded. . Such testimony is admitted upon the theory that, if she made no complaint of such an outrage, her silence might be construed as evidence that it had not occurred.

3. ——— *Same.* In the case of an adult person who had consented to the act such complaint would not be expected, and, the reason failing, the rule also fails; but where the person is a child of tender age testimony that she made such complaints to persons in whom she would naturally confide may properly be admitted, in the discretion of the court, having regard to the age and intelligence of the child, the time and circumstances under which they were made, and the reasons upon which the rule rests.

4. ——— *Evidence—Detailed Statement by Prosecutrix to Officers.* The statement of the child, made several days afterward, giving details of the alleged offense in response to inquiries made by an officer for the purpose of formulating a complaint for the defendant's arrest, which are not the spontaneous or natural expressions of injured sensibilities, should not be admitted.

Appeal from McPherson district court; PETER J. GALLE, judge. Opinion filed May 9, 1908. Reversed.

*Fred S. Jackson,* attorney-general, and *George W. Allison,* county attorney, for The State.

*G. F. Grattan,* and *J. M. Grattan,* for appellant.

The opinion of the court was delivered by

BENSON, J.: The defendant was charged with statutory rape, and was convicted of an attempt to commit that offense. He complains of the insufficiency of the information, and specifies alleged errors occurring on the trial.

The information charged that the defendant did "unlawfully, feloniously commit rape upon a female person under the age of eighteen years, to wit, . . . by carnally knowing her, the said," etc. The omission of the words "and unlawfully" after the word "carnally"

is the alleged defect relied upon. The word "unlaw-
fully," however, appears in the information. The of--
fense was clearly and plainly charged, and the informa-
tion was sufficient. (Gen. Stat. 1901, §§ 5550, 5551.)

The defendant also complains of the admission of
testimony tending to show prior undue familiarity on
the part of the defendant with the prosecutrix. The
evidence was properly received (The State v. Borchert,
68 Kan. 360, 74 Pac. 1108), and its purpose and effect
were clearly stated in the instructions.

Numerous assignments of error are predicated upon
the admission of testimony of the complaints of the
prosecutrix concerning the violation of her person.
The competency of such complaints in cases of this
character was referred to in *The State v. Daugherty*,
63 Kan. 473, 65 Pac. 695, and *The State v. Oswalt*, 72
Kan. 84, 82 Pac. 586. The complaints testified to were
first made to a girl friend who was close at hand and
to defendant's wife quite soon after the alleged occur-
rence, and to the sister of the prosecutrix on the follow-
ing night. These consisted of charges of improper
liberties—acts admitted by the defendant when the girl
related them to his wife, and related also in his testi-
mony on the trial; so, if erroneously admitted, the tes--
timony so far was not prejudicial.

Twelve days after the day on which she said the of-
fense was committed she was visited by Mr. Enns, a.
justice of the peace, and Mr. Jones, a friend who ac-
companied the officer. The justice called, it seems, to
take her complaint as the basis of the criminal prose-
cution which followed. Mr. Jones testified concerning
this interview that he assisted in obtaining the infor-
mation and making it possible to write the complaint.
He further testified:

"Ques. And after you had a talk with her, then was.
there anything written? Ans. There was.

"Q. Where was that written? A. It was written in.
the justice of the peace's office.

"Q. Was that after you had been to the Kaufman

home. A. If it is proper I will state it in a few paragraphs. . . . After I was at the house?

"Q. Yes, sir. A. I went first to the justice's office.

"Q. You say you saw a paper written up. A. Yes, sir.

"Q. After you saw that paper written up, were you at the Kaufman house after that? A. Yes, sir.

"Q. Did you see some paper there? A. Yes, sir.

"Q. Did you hear it read to Lulu Kaufman? A. Yes, sir."

"Q. You had no further conversation with her and Mr. Enns after that? A. We had some more talk.

"Q. Did you refer their question after that talk, or was there any more written down? A. There was more written down.

"Q. Who did the writing? A. Mr. Enns.

"Q. In whose presence was it done? A. In my presence and Lulu's. .

"Q. Was that an additional writing to the first paper? A. It was in the one.

"Q. Do you know whether or not Lulu Kaufman signed that last paper? A. She did sign it.

"Q. I will ask you, if you know, whether she was sworn to it or not? A. It was sworn to."

Mr. Enns, the justice, testified that he went to the home of the prosecutrix with Mr. Jones and saw Lulu there, her mother being present part of the time; that he was there half an hour and then went to his office and wrote a paper, and then went back and saw Lulu and Mr. Jones the second time; that Lulu did not sign the paper which he had written. The following testimony was then given by this witness:

"Ques. Did you have any conversation there at that time with Lulu? Ans. Yes, sir; there was a conversation.

"Q. Did you do anything after that conversation? A. Wrote a second paper.

"Q. Where did you write that—where were you when you did the writing? A. I am inclined to think I wrote that right there, having a blank with me.

"Q. Who was present? A. Mr. Jones, I think, was present.

"Q. Who else? A. Lulu.

"Q. This second paper was written, was it, then signed up? [No reply.]

"Q. Do you remember now whether you administered the oath there? A. Yes, sir; she signed it and swore to it."

Neither Mr. Jones nor Mr. Enns was cross-examined. The girl, Lulu, was then recalled, and testified concerning the same interview as follows:

"Ques. You remember the circumstances of their visit there that Monday, do you? Ans. Yes, sir.

"Q. That was the Monday after you had seen Mr. Jones at the Sunday-school on Sunday? A. Yes, sir.

"Q. You remember the paper they presented to you, the first paper? Did they show you a paper when they came there? A. I think so.

"Q. When did they show you a paper—the first or second time they came? A. I think the second time.

"Q. I want to ask you which conversation it was that you had with Mr. Jones or Enns that morning that you told them all of this, whether it was the first conversation or second time they were there? A. The second time."

Before being recalled Lulu had testified that she had told two things before, but had not told it all; that she told it all first to Mr. Jones. What she had first told related to certain indecent liberties, but involved no charge of intercourse. It seems that this latter charge was the one referred to when she said that she "told it all" to Jones. This appears sufficiently by inference from the whole examination, and was testified to by her on cross-examination. On redirect examination she was permitted to say that the reason she had not told it all to Mrs. Hoskinson and to her sister and mother was because she was ashamed and afraid to do so. The testimony of Jones, Enns and Lulu, purporting to relate what Lulu had told them, and copied above, was given over the defendant's objection. It appears from the abstract that the county attorney in his argument to the jury commented on what the prosecuting witness had told Jones about the affair, and that upon objection by

defendant's counsel the court "sustained the above objection . . . and instructed the jury not to consider the statements of the county attorney as to statements of Lulu and Jones not in the record in this case."

The complaints of the injured female in trials for common-law rape are admitted upon the theory that if she made no complaint of such an outrage her silence would naturally be construed as evidence that it had not occurred. The prosecution is allowed to forestall this presumption by showing that she did not remain silent. (2 Wig. Ev. § 1135.) This rule admits, in the first instance, the complaint merely; the details are excluded. (3 Greenl. Ev., 16th ed., § 213.) Some courts have admitted a full relation of the details told by the prosecutrix, but the weight of authority admits only the fact that a complaint was made; it is not permissible to relate the name of the person of whom she complained. (*The State v. Daugherty*, 63 Kan. 473, 65 Pac. 695.) A probable exception to this rule is where the complaint was made in such immediate relation with and sequence to the act complained of as to be part of the *res gestæ*; but that has no application here. In the case of an adult person who had consented to the act a complaint would not be expected, and so it was said in the Daugherty case that, the reason failing, the rule also fails. The reason, however, does not fail where outrages are charged upon children of tender age. For such children to make complaints of such abuse to their mothers or others in whom they confide is natural, and testimony that they did so may properly be admitted, in the discretion of the court, in view of the age and intelligence of the child, and the time when and the circumstances under which the complaints were made, having regard to the reason upon which the rule rests. This child was thirteen years of age, and the ruling of the court admitting testimony of her complaints would be approved if such testimony had been limited to the fact that she did so complain; but by permitting evi-

dence of her statements upon which the affidavit for the defendant's arrest was prepared, and that she then, to use her own expression, repeated by witnesses, "told it all," the court erred to the prejudice of the defendant, and this was made more harmful by the fact that the county attorney in his argument referred to this as evidence supporting the principal charge. The ruling of the court in withdrawing from the jury the statements of the county attorney not in the record did not prevent the jury from considering this improper testimony, for it was in the record. It is urged that in view of the defendant's admissions no prejudice resulted from this evidence. His admissions, however, only related to the charges of undue liberties which the prosecutrix first made to Mrs. Hoskinson and others, and not to the final charge related to Enns and Jones—a charge which, it seems, was not made spontaneously and naturally from a sense of outrage, but only after diligent inquiry and examination by the witnesses. This inquiry was properly made in order to prepare the formal complaint for a public prosecution, but was inadmissible as evidence on the trial.

The judgment is reversed, and the case remanded for a new trial.