## OKLA DAVIDSON v. STATE.

No. A-8826.   June 21, 1935.
(46 Pac. [2d] 573.)

Geo. M. Frittz and Jack Harris, for plaintiff in error.

The Attorney General, for the State.

DOYLE, J. Plaintiff in error was convicted in the district court of Texas county upon an information charging that in said county on the 3d day of June, 1934, Okla Davidson did commit the crime of rape upon Iona Wright, a female under the age of 14 years, not the wife of the defendant, said defendant being over 18 years of age.

Upon his trial the jury found him guilty as charged, and fixed his punishment at confinement in the penitentiary for 15 years. Motion for new trial was duly filed and overruled.

September 26, 1934, the court entered judgment and sentenced him to confinement in the reformatory at Granite for a term of 15 years. To reverse the judgment he appeals.

After a careful examination of the record, the conclusion of the court is that the judgment in this case cannot be permitted to stand.

The record shows the preliminary complaint was filed before J. E. Dailey, justice of the peace, August 1, 1934, and the defendant was arrested September 7th at Amarillo, Tex.

It appears that Iona Wright was born December 30, 1920, and lived with her parents in Guymon; and at the time of the trial had been detained in the county jail for about a month following a hearing before the county court pending an order of commitment to the State Industrial School at Tecumseh; that the defendant was one of at least five persons charged with like offenses based on her delinquencies; three of these young men had entered pleas of guilty, and were each sentenced to confinement for 15 years, then paroled to their parents by the district court of Texas county.

Iona Wright testified that she was at the home of Mrs. Elsie White when the defendant and Clifford Rhodes came there about the middle of the afternoon to get bottles; that the Victrola was started, and she danced with the defendant, Mrs. White with Rhodes, and that she and the defendant danced into another room and he "shut the door and there we had intercourse"; that they were in the room five or ten minutes, then returned to the other room and danced again; that about 4 days later she was visiting Mrs. White, and the defendant came there and again had sexual intercourse with her, this time in the north room where the Victrola was.

On cross-examination she stated that she had lived in Guymon about 4 years; that she is detained in the county

jail and has been there about a month; that she has a disease; that Dr. Morris Smith is treating her; that she never did say anything about the conduct of the defendant to her mother or father.

Mrs. Elsie White, wife of King White, testified that she lived in the southwest part of Guymon in a house behind the Phillips Feed Store; that Iona Wright was visiting her when the defendant and Clifford Rhodes came there that day to get some bottles; that the Victrola was started and they commenced to dance, Iona with defendant, witness with Clifford Rhodes; that her children at the time were outside playing; that the defendant danced with Iona into another room and "then danced in there just a little while and then came back." She further testified:

"Q. Mrs. White, you have pleaded guilty to maintaining a public nuisance?

"The Court: Objection overruled, you may answer.

"Q. Is that a fact? A. That's what they said.

"Q. You are now being confined in the jail on this charge? A. Yes, sir."

On cross-examination she stated that it was about 3 o'clock in the afternoon when they came there; that she had lived in Guymon 17 years and was the mother of six children; that Iona Wright said she was out of cigarettes and the defendant gave her 50 cents and she went and got some cigarettes, then Iona asked the defendant to go and get some whisky and he refused; that the defendant told witness that, if different parties did not quit giving that girl liquor to drink, witness was going to get into trouble; that, after the defendant and Rhodes left, Iona told witness that the defendant did not have sexual intercourse with her.

On redirect she testified that the defendant came to her place when this girl was there three or four days later and asked her if she had any bottles; that her children were there and she went into another room for a little while; that there was no door between the two rooms, just a curtain, not drawn; that the defendant was there just a few minutes.

The defendant testified in his own behalf:

That he had lived in Texas county practically all his life, was married, had a wife and two children, a son aged 14 and a daughter aged 12. That on or about the 3d of June he, with his brother-in-law, Clifford Rhodes, went to the King White residence to get some bottles. Mrs. White and several of her children and Iona Wright were there; the children were from 4 to 14 years old. The Victrola was started, and he danced with the Wright girl and his brother-in-law danced with Mrs. White. That the Wright girl said she had something she wanted to tell him and they danced into the next room and sat down on the bed and she asked him if he would not get some whisky and all go on a party; then they went back and danced again. He then got the bottles and left.

That they were not there more than 30 minutes. He denied that he ever had sexual intercourse with Iona Wright and denied the acts she testified to.

That he called at Mrs. White's to get some bottles 4 or 5 days later and the Wright girl was there. That he was not there more than three or four minutes. That Mrs. White had told him Iona was infected with a venereal disease.

On cross-examination he stated that, when he heard a complaint had been made against him, he sent for Tom

Wright, the girl's father, and told him that he was not guilty, that something was wrong some place, and her father told him that he had sworn to the complaint, and said, if he had not sworn to it, he would not swear to it now, and her father advised him to leave, and told him that was the best way out of it, then he said, "Mr. Wright I wouldn't leave under any circumstance if I thought I could make bond because I am not guilty"; that 4 or 5 weeks later he was arrested at Amarillo, Tex. Sheriff Sullivan appeared the second day after and told him that he was going after the papers to bring him back, and he said to the sheriff, "Adley you got me accused of this charge; I ain't going back until I have to. You know the condition of all the other boys, I read in the paper where Ewel Dixon killed himself on the same charge and you know they have sent three boys to the penitentiary for 15 years on the same charge and I am not going back if that girl swears I am guilty, no matter how innocent I am."

George Raines testified that he was present when Tom Wright, Iona's father, had a conversation with the defendant, and Okla told him he had not done anything wrong, and Tom told him if he would leave the country he would hush it up and there would not be anything more said about it, and Okla said that if he could make bond he would not leave.

Tom Wright in rebuttal testified: "I told him if I was guilty of that kind of a trick I would leave the country and never come back"; that the conversation was behind the defendant's restaurant, and George Raines had gone into the restaurant at the time; then he got into the defendant's car and was driven home.

C. A. Sullivan testified that his wife had the defendant arrested at Amarillo, Tex., and he received notice

from the sheriff there that they were holding him and that the man would not return without extradition papers; that he then secured an extradition warrant from the Governor of Oklahoma to the Governor of Texas for the return of the defendant, and then went to Amarillo and the defendant said, "I am not going back until I have to"; then he went to Austin, Tex., secured the papers and returned to Amarillo and returned with the defendant; that Joe Sullivan, his brother, and Fred King, the county attorney, accompanied him on the trip.

The principal assignment of error is that the evidence is insufficient to justify the verdict or support the judgment of conviction, in that the testimony of the prosecuting witness is not corroborated by any other witness and that the state's testimony was conflicting, that the court erred in the admission and rejection of certain evidence, and that the instructions given by the trial court incorrectly state the law.

Our Penal Code provides that rape committed by a male over 18 years of age upon a female under the age of 14 years is rape in the first degree (section 2518, St. 1931); and that rape in the first degree is punishable by death or imprisonment in the penitentiary, not less than 15 years in the discretion of the jury, or, in case the jury fail or refuse to fix the sentence, then the same shall be pronounced by the court (section 2519, St. 1931).

The court gave the jury the following instruction:

"No. (9) You are instructed that the defendant may be convicted upon the uncorroborated evidence of Iona Wright, providing you find she is a female person under the age of 14 years and not the wife of the defendant, providing you find beyond a reasonable doubt that the defendant had sexual intercourse with Iona Wright as alleged

in the information. (Excepted to by defendant. Exception allowed.)"

This instruction tells the jury that the testimony of the prosecuting witness need not be corroborated and makes no qualification or exception. It calls attention to the testimony of a single witness, although there were other witnesses for the state. The danger of such an instruction is that the importance and credibility of such testimony are likely to be magnified in the minds of the jury.

While a conviction for statutory rape may be had on the uncorroborated testimony of the prosecuting witness, this is only warranted when all the other facts and circumstances of the offense are corroborative of her testimony and her statements are not contradictory. In cases of this character it is reversible error, where the evidence is conflicting and more than one witness testifies for the state, to single out the testimony of one of such witnesses as the basis for a verdict of guilty.

It was said by this court in the case of Morris v. State, 9 Okla. Cr. 241, 131 Pac. 731, 735:

"This court does not hold with some that, as a matter of law, rape cannot be established by the uncorroborated testimony of the prosecutrix, but in common with all courts recognizes that, without such corroboration, her testimony must be clear and convincing. And, where the testimony of the prosecutrix bears upon its face inherent evidence of improbability, there should be corroboration by other evidence, connecting the defendant with the commission of the crime. The law is that the life or liberty of a citizen shall be taken only in case the right to do so is established beyond all reasonable doubt; and while there is no rule of law which forbids a jury to convict of rape on the uncorroborated testimony of the prosecutrix, provided they are satisfied beyond a reasonable doubt of the truth of her testimony, yet the courts have always recognized the dan-

ger of conviction on her uncorroborated testimony, and the testimony of the prosecutrix, if inherently improbable and uncorroborated, will not justify or support a conviction; as the only reasonable conclusion in such cases is that such verdicts are the result of passion or prejudice, and therefore contrary to law."

In the case of Ferbrache v. State, 21 Okla. Cr. 256, 206 Pac. 617, this court held that:

"Under the laws of this state, conviction for rape may be had on the uncorroborated testimony of the prosecutrix; but when her testimony is contradictory, and the defendant testifies and denies specifically the testimony of the prosecutrix, and his testimony is corroborated, the testimony of the prosecutrix, standing alone, is not sufficient to warrant a conviction."

In the case of Witt v. State, 29 Okla. Cr. 357, 233 Pac. 788, the syllabus reads:

"In a case of rape where all the material evidence on the part of the state is contradictory, inconsistent, and unreasonable and bears upon its face inherent evidence of improbability, it is insufficient to sustain a conviction, and in such case the verdict will be set aside."

We have examined the record carefully, and are unable to reconcile the conflicting testimony; the prosecuting witness, recalled four times, each time made conflicting statements. There is a direct conflict in the testimony of the witnesses for the state as to the facts and circumstances of the offense charged, and the defendant's denial is in part corroborated by the state's witness, Mrs. White.

Courts are especially charged with the duty to carefully examine the evidence in rape cases, where, as observed by Lord Hale, an accusation is easily made, difficult to be proved, and still more difficult to be defended by one ever so innocent.

After consideration of the entire record, we are inclined to think that the verdict was more the result of prejudice or public sentiment than the calm and dispassionate conclusion of the jury upon the facts in evidence.

The record discloses other rulings, arising during the course of the trial, that would be difficult to defend.

For the reasons stated, the judgment of the district court of Texas county is reversed and the case remanded.

The record discloses that the defendant, being unable to give bail, is now confined in the reformatory at Granite. The warden of the reformatory will surrender the defendant to the sheriff of Texas county, who will hold him in custody until otherwise ordered, according to law.

DAVENPORT, P. J., concurs. EDWARDS, J., absent.