# A. L. COPPAGE v. STATE.

No. A-10252.   May 19, 1943.

(137 P. 2d 797.)

Justus & Lucas, of Tulsa, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam Lattimore, Asst. Atty. Gen., and Dixie Gilmer, Co. Atty., of Tulsa, for defendant in error.

BAREFOOT, J.  Defendant, A. L. Coppage, was charged in the district court of Tulsa county with the crime of rape by force, was tried, convicted, and his punishment assessed by the jury at confinement in the State Penitentiary for a period of 25 years, and has appealed.

For reversal of this case it is contended:

First, that the evidence is insufficient to sustain the judgment and sentence, and the court erred in refusing to sustain a demurrer to the evidence, and in refusing to give a requested peremptory instruction for acquittal.

Second, that the court erred in permitting the introduction of incompetent, irrelevant, and immaterial testimony.

Third, that defendant did not receive a fair and impartial trial under the law and facts.

These three assignments of error are condensed from the nine submitted in defendant's brief, and may be considered together. A statement of the evidence is essential.

Defendant, A. L. Coppage, was a white man, married, 40 years of age, and lived in his own home at 849 North Gary in the city of Tulsa with his family, which consisted of his wife and two daughters, ages 10 and 14 years. He was charged by information filed in the district court of Tulsa county on November 7, 1941, with having on April 28, 1941, in Tulsa county, committed the crime of rape by force upon a negro woman by the name of Alma Floyd, who had previously been married, but was then separated from her husband.

The evidence of the prosecutrix was that on the night of the assault she was working for Mrs. Don Hagler, at 1210 E. 19th street, in the city of Tulsa. She left her servant's quarters at that place about 8:30 the evening of Monday, April 28, 1941, and went to the home of her cousin, Alma Gordon, some eight or ten blocks away. She remained there until about 10 o'clock, when she started back to her home, walking upon the public streets and being accompanied about a block by her cousin. As she proceeded home, her attention was attracted by a man in an automobile, who asked her if she wanted to ride home.

She declined the invitation, and the man told her he was going down the street and when he came back he would take her home. The man drove about half a block, turned his car around and came back. She had been frightened, and was standing in front of a big home, where she could run in if anything happened. As she stood facing the house she heard a noise, turned around and saw the man with one foot on the running board of the car, and a pistol in his hand. The man did not get out of the car, but while in this position, put the pistol right in her face and told her to get in the car. She made no attempt to run to the house, or to make any alarm, but by reason of her fear, she got into the car. He drove through the streets of Tulsa, and into the country and onto a secluded country road. He made proposals to her that are unprintable, and finally got out, went around the car, opened the door and jerked her out onto the running board. He then unfastened his pants, and dropped them down around his feet, and when she refused to do as he commanded, he having his pistol in his hands at all times, he told her to get up, and when she moved too slowly, shoved her into the front seat of the car, and knocked her head down under the steering wheel. She testified that he tore her pants off and two buttons off her waist but did not tear her skirt. After he had torn her clothes off, he put his gun on the running board and stooped down to the ground, feeling around, and told her he was looking for his false teeth. He then had intercourse with her by force. She testified that when defendant had accomplished his purpose he told her if she would keep her mouth shut he would take her to town. He then took her to Nineteenth and Madison, which was in very close proximity to her home, let her out of the car, and as he drove away, she got the tag number of his car. She did not write it down,

but remembered the number, and it was 2-5139. After she reached her quarters, she awakened Mrs. Hagler, by whom she was employed and who was asleep upstairs, and notified her of the assault. The evidence of Mrs. Hagler as to this conversation will hereafter be given in full. She did not notify the police until the following Thursday morning, May 1, 1941. A policewoman then went to her home and arranged for her to come to the police station in the afternoon. She went and gave a description of the party who had assaulted her, and also the number of the car. She did not know and had never seen the defendant prior to the assault, and the next time she saw him was when she identified him among five persons who were presented at the police station on September 25, 1941, when she was taken there by the police to see if she could identify him, four months and 28 days after the assault. On this date she also identified the automobile by the tag number, at a garage in Sand Springs. She was positive as to the date of the assault being April 28, 1941, and fixed this date as a certainty by reason of the fact that Mrs. Hagler gave a party the next day, at which she served the guests.

This is a fair statement of her evidence, and other evidence given will be referred to in a discussion of this case.

The evidence relied upon by the state to corroborate that of the prosecutrix is, first, the fact that defendant owned an automobile on the date of the assault, a description of which compared favorably with that given by prosecutrix, and which bore the license number given the police by the prosecutrix. Second, the fact that defendant admitted that he had false teeth, thereby confirming the statements she claimed he made at the time of the assault. Third, certain facts concerning the automobile

of defendant. Fourth, certain statements made to police officers at and after the arrest of defendant, reference to which will hereafter be made. Fifth, the testimony of Mrs. Don Hagler on rebuttal, as to certain statements made by prosecutrix to her after she reached home, following the assault.

After the prosecutrix had testified, the state placed upon the witness stand in chief five witnesses. Mrs. Beulah Johnson, Alfred DeMoss, Grady Porter, Joe Phillips, and Eugene Bewley; and on rebuttal five witnesses, two of whom had been used in chief. These five witnesses were Clarence Hall, Leslie Bartlett, Alfred DeMoss, Grady Porter, and Mrs. Don Hagler. The witnesses in chief were police officers, one a police woman.

The policewoman, Beulah Johnson, testified that the prosecutrix made complaint to her on Thursday, May 1, 1941, that she went to her home and made arrangements to see her that afternoon. That prosecutrix came to the police station and talked to her, and gave her the license number of the car, which was 2-5139. That afterwards and on September 25, 1941, she saw a car bearing that number at the time defendant was arrested. Prosecutrix pointed it out to her and two other policewomen who had taken her to the yard where they had located it. She also testified that prosecutrix took her over the road she had been taken on the night of the assault, and she testified with reference to the description of the road, which is immaterial. This witness, while on the stand, was asked:

"Q. Will you tell the court and jury why it was, complaint having been made May 1st, and no arrest of this man having been made until in September? Mr. Justus: Objected to as incompetent, irrelevant and immaterial. The Court: Overruled. Mr. Justus: Exception.

The Witness: Because this was a negro girl making a charge against a white man, we proceeded very, very cautiously, and until several other girls— Mr. Justus: Objected as prejudicial. The Court: Sustained. Mr. Justus: And I move the answer be stricken and the jury admonished not to consider the same. The Court: Sustained, and the jury is instructed not to consider the same."

Reference will hereafter be made to this evidence.

Alfred DeMoss, a police officer, identified a toy pistol that was taken from defendant's Plymouth automobile, tag No. 2-40608, when he was arrested on September 25, 1941, and the same was introduced in evidence.

Grady Porter, a police officer, testified to arresting defendant on September 25, 1941; that after his arrest he was placed in jail, and later brought down to be questioned. He was asked:

"Q. Tell the court and jury the substance of that conversation. A. We questioned him, after we had him identified. We questioned him about the charge that we had him accused of, at that time, and, of course, he denied what we had him accused of. Q. What did he say, in that conversation?' A. He finally wound up by saying he just did not know—that he was not responsible for what he done—that he just did not know what he did; that he had spells, when he would go out of his head, and that he did not know what he would do. He said there was only two people in the world that knew that besides himself; that one was his father and one was his wife. Q. Did he say anything else with reference to pleading guilty? Mr. Justus: Objected to as leading. The Court: Sustained. Q. What else, if anything, did he say? A. Well, after we had taken this girl down and had him identified—he knew she had identified him—we asked him if he wanted to make a statement, or if he wanted us to keep on bringing them in there and getting him identified. Q. What did he say? A. He finally asked us what he would get, if he did plead guilty—if he would

make a statement and plead guilty. Q. What did you tell him? A. We told him we did not have any say about that—that we could not promise him anything; that that would be up to the county attorney's office what he would get. * * * Q. Did he ever, at any time, admit to you he had committed this crime? A. No, he never did admit it, but he came very near it. * * * Q. In all that examination by the members of the police force, did this man ever, at any time, tell you he was guilty of this crime? A. He didn't tell us he was guilty, but he asked what he would get if— Q. Just answer the question 'yes' or 'no'. Mr. Gilmer: Objected to as having been asked and answered. The Court: Overruled. I understand you are talking about two different occasions. Mr. Justus: Q. Did this man, at any time, tell you he was guilty of this crime, or any other crime? A. No. Q. In any conversation you had with him, did he tell you he was guilty of this crime? A. No."

Alfred DeMoss was called and corroborated the evidence of Officer Grady Porter as to what defendant said about pleading guilty when being questioned by the police officers. He testified that defendant at no time told the officers that he was guilty.

Police Officer Joe Phillips testified:

"Q. Please tell the court and jury, Joe, just what the substance of that conversation was, as nearly as you remember. A. Well, officers DeMoss and Porter were talking to him in a room, and I went in and listened to the conversation a little bit and asked him if he was guilty, and asked him if he wanted to make a confession to the officers, and he studied a little bit and said it would be an awful thing to confess to, and if he did, what would he get out of it—how much time. Q. Is that about the substance of it? A. That is about all."

Eugene Bewley, sergeant of records in the Tulsa Police Department, testified from his records that '33 Chevrolet Coach, motor No. 3587308, tag No. 2-5139, was re-

corded as being the property of M. A. Coppage, 849 North Gary in April, 1941 ; and that a two-door Plymouth, motor No. P. 11-450235, license No. 2-40608, 1941, was owned by A. L. Coppage, 849 North Gary, Tulsa, for the year 1941, in September.

With this evidence the state rested its case.

We now give a statement of the evidence of the defendant.

He introduced 23 witnesses, of which eight were character witnesses. He testified that he had been employed by Rounds & Porter Lumber Company since 1924, as mill foreman, and had never before been arrested or charged with any crime. He denied in toto the testimony of the prosecutrix, Alma Floyd. He testified that he worked all day on April 28, 1941, at his usual place of employment with the Rounds & Porter Lumber Company. That about 5 o'clock in the afternoon his wife and his sister, Mrs. H. F. Young, called for him and took him home. Mrs. Young remained there during the evening and did not leave until about 10 o'clock. After arriving home he went to work in his bedroom, which he was remodeling, doing the work himself. He worked until about 6:30 or 7 o'clock, when he and his family and Mrs. Young had the evening meal. He may have read the paper for a few minutes thereafter, but then returned to his work in the bedroom. His brother-in-law came to the house about 8 o'clock, and came back where he was working. Mr. and Mrs. Young remained there until about 10 o'clock, when they left for their home. Just a short while before they left, Mr. D. H. Harrison, who also worked for Rounds & Porter, came to his home and he and Mr. Harrison worked on two sets of plans and specifications for buildings at Muskogee and Hallett, Okla., for which materials were being furnished by the firm of Rounds & Porter.

This was in line with their work and it was necessary for him and Mr. Harrison to check this work. They worked until about midnight, when his wife called him and Mr. Harrison left for his home. The plans and specifications upon which they worked, together with the marks made with red pencil indicating the changes to be made thereon because of shortage in materials, were introduced in evidence.

This part of defendant's evidence was fully corroborated by Mr. and Mrs. H. F. Young, and Mr. Harrison, by the wife of defendant, and by his two daughters, 10 and 14 years of age, respectively, who both testified that their father was at home working when they retired, about 9 o'clock.

Mr. and Mrs. Young and defendant's wife specifically identified the date as April 28, 1941, by reason of the fact that Mrs. Young and the wife of Mr. Young's partner were both pregnant at the time and had often talked together as to which one would be confined first, and on the morning of this date, April 28, 1941, the other woman had given birth to a child. Mrs. Young recalled phoning her brother and his wife in reference thereto, and also talking to them about the matter. A birth certificate was introduced in evidence, showing the birth of this child on the morning of April 28, 1941.

Mr. Young also fixed the date as April 28, 1941, by reason of having paid defendant $4.50 for work which he had done at his cafe a short time prior thereto. His books were introduced in evidence, showing where he had charged this payment on the morning following. Other witnesses testified to the defendant having worked for Mr. Young prior to April 28, 1941.

Mr. Harrison completely corroborated the evidence of defendant, stating that he was at defendant's home

from 10 o'clock until 12 on the night of April 28, 1941, working on the plans and specifications, as testified by defendant. He gave in detail the reasons for his knowing it was the night of April 28, 1941, that he was there. He had returned from a trip to Bartlesville on that date and had tried to contact defendant at the plant by phone, but could not do so, reached him by telephone at his home and later went to his home to work on the plans and specifications. It is unnecessary to go into further detail.

The wife of defendant corroborated the evidence of defendant in every respect as to going with her sister-in-law after him, and his being at home during all of the evening and night. She testified to her normal physical condition.

Many other minor details were brought out by the evidence offered by the defendant to corroborate his testimony and to refute the evidence of the prosecutrix. We shall not go into the details but only mention a few of the more important.

The prosecutrix, Alma Floyd, had testified that the cushions in the automobile in which she was taken were badly torn. Defendant and a number of witnesses testified that his car had seat covers thereon at the time and was not torn in any way. The undisputed evidence was that defendant had sold his Chevrolet car which bore license No 2-5139 and which the prosecutrix had identified as the number of the car in which she rode, on June 30, 1941, to the Parrish Motor Company; that Theodore McCracken bought the car from the Parrish Motor Company, repainted it, and on July 2, 1941, sold the same to Clarence Hall, who was the owner of the car on September 25, 1941, at the time it was identified.

The defendant testified, and many witnesses corroborated him, that during the month of April, 1941, some

person had removed the license tags from his automobile, presumably in fun, and they were not returned to him for some time, when they were thrown through the window where he was working. The witnesses and the defendant were not clear as to the date when this happened, or when they were returned. Other pranks of a similar character had been perpetrated by those who were employed with the defendant previous to this time.

Defendant had purchased a Plymouth car and was driving the same when he was arrested on September 25, 1941. A toy pistol was found therein. This was introduced in evidence by the state. Defendant testified to its being placed there by the children. The prosecuting witness testified that the man who assaulted her had a dark pistol. The toy pistol introduced was bright and shiny. At the time of defendant's arrest he was in the Plymouth car, taking his children to school.

The prosecutrix testified that the night of April 28, 1941, was a clear night, and that it was not cloudy and that it was not raining. Evidence was offered by the defendant by the government weather observer at Tulsa to show that it was cloudy on this night, and that on two occasions, at 10:31 p. m. and 11:15 p. m. there were slight traces of rainfall.

Defendant offered in evidence eight character witnesses, who testified as to his previous good character. All of these witnesses were good, substantial citizens of Tulsa, and reputable business men and women. One was a Catholic priest who resided in Tulsa. Among them were the owners and managers of the plant where defendant worked and other business executives, and his neighbors. They all testified that he had never at any time been in trouble of any kind, to their knowledge.

The state on rebuttal placed on the witness stand five witnesses. Clarence Hall testified that he bought an automobile from Mr. McCracken on July 2, 1941, and that the tag number was 2-5139, and that the upholstering was in bad shape at that time.

Leslie Bartlett testified that he was employed by the McCracken Motor Company of Sand Springs in July, 1941, and that he cleaned up the automobile sold by Mr. McCracken to Mr. Hall, and found a toy pistol of the kind sold by Kress & Company in the car. It was under the back seat.

Alfred DeMoss, one of the police officers who testified on direct examination, was recalled and testified that while defendant was in jail he asked him if he had false teeth, and that he said he did. He also testified to examining the automobile on September 25, 1941, and that the license plate was put on with bolts and that they were pitted and rusty.

Certain evidence was offered as to defendant's statement to the police that he sometimes had spells and did not know what he was doing. This testimony was highly conflicting and to our mind was not material to the issues here involved.

The evidence of the police officers as to their conversation with defendant cannot be considered as a confession, or even as a statement against interest. All of the officers who testified in reference thereto clearly stated that defendant at no time admitted that he committed this crime, but that he denied committing the same. It is readily observed from a reading of the record that the police officers were attempting to have different parties identify defendant, and thus connect him with a number of crimes. It was not unusual that defendant under these circumstances should have made inquiry of the officers,

as he said he did, as to what punishment he would receive of he entered a plea of guilty. He could have very easily been considering the publicity, humiliation and disgrace that would be brought upon his family by a public trial of the charges, and for this reason made the inquiry as to the punishment he would receive if he entered a plea of guilty. We are not saying that this evidence may not have been proper for the consideration of the jury, but the explanation which he gave was very reasonable in view of the facts and circumstances of this case.

The evidence of Mrs. Don Hagler was given in rebuttal, and by reason of the importance of her testimony, we give the same in full, as follows:

"Q. Will you state your name, please ma'am, to the court and jury? A. Mrs. Don Hagler. Q. You live here in Tulsa, Mrs. Hagler? A. Yes. Q. What is your address, please, ma'am? A. 1210 East 19th. Q. About how long have you lived at that particular address? A. Over 20 years. Q. Mrs. Hagler, are you acquainted with or have you had in your employ a colored girl by the name of Alma Floyd? A. Yes, sir. Q. Was she working for you during the month of April, this past year? A. She was. Q. I will ask you, please, ma'am, Mrs. Hagler, did she, at any time on or about, or in the neighborhood of the 28th of April, report to you on any night around that time the fact that she had been assaulted? Mr. Justus: Objected to as incompetent, irrelevant and immaterial, and not proper rebuttal. The Court: Overruled. Mr. Justus: Exception. Q. Answer, if you know—did she report and state to you as to any occurrence of that kind? Mr. Justus: Same objection. The Court: Overruled. Mr. Justus: Exception. A. At one time. Q. About what time in the night was it? A. Well, I had been asleep, and she called me—I could not tell you the time of night. I was upstairs in my room, and I think I had been asleep and she called me down. Mr. Justus: Move to strike the answer as incompetent, irrelevant and immaterial and

not proper rebuttal. The Court: Overruled. Mr. Justus: Exception. Mr. Gilmer: May he have that same objection and ruling on this line of testimony, so she can testify? The Court: If the defendant will request it, I will grant it. Mr. Justus: Yes—the defendant does object to testimony along this line and to each and every question asked, as incompetent, irrelevant, and immaterial and not proper rebuttal. The Court: The objection will be considered to each question asked the witness, and the same will be overruled by the court and an exception allowed the defendant with reference to each question. Mr. Justus: And, I want to make the further objection that it is hearsay. The Court: Overruled. Mr. Justus: Exception. Q. Now, Mrs. Hagler, she did come and awaken you the same night? A. She did. Q. And, Mrs. Hagler, did she tell you anything concerning the license number of the car that she saw? A. Yes. Q. And what did she tell you with reference to that particular license number, Mrs. Hagler? A. I don't remember the number. Q. I see—did she give you a number at that time? A. Yes, she did. Q. What did she say, in connection with how she got that number? A. She said there was a bus there, I think a little ahead of them, and the light from the bus enabled her to see the number. They stopped on account of the bus being ahead and she saw the number by the light of the bus. Q. She did call your attention to a number which she got? Yes, sir. Q. You don't remember the number though? A. No, sir. Q. Did she make a statement to you concerning the condition of her underwear? A. Her underclothes. Q. What did she say? A. Just ruined them, was all. Q. Her clothes were ruined—did she say anything to you in that conversation with reference to false teeth that the man had? A. Yes. Q. What, as nearly as you remember, did she say to you as to that? A. Well, they came loose, or something. I just remember she mentioned false teeth, and they were loose. Q. That is, the false teeth came loose on the man who assaulted her? A. Yes, sir. Q. Mrs. Hagler, you are here this morning, in answer and in response to a subpoena which was served on you by the sheriff's office of this county? A.

Yes, sir. Q. And that is why you are here today? A. Yes. Mr. Gilmer: You may take the witness. Cross-examination by Mr. Justus: Q. Mrs. Hagler, do you recall— Mr. Justus: The defendant first moves to strike all the testimony of this witness for the reason that it is incompetent, irrelevant, and immaterial and hearsay and not proper rebuttal. The Court: Overruled. Mr. Justus: Exception. Q. Mrs. Hagler, do you recall the date? A. No. Q. Do you know, even, the month when this girl made this complaint to you? A. Well, I read it in the papers. Q. Do you know what month, please, ma'am, she made this report? A. In April. Q. Do you know whether it was the 26th day of April or the 28th day of April? A. No. Q. Do you know whether it was the first of April or the last of April when she made this report? A. Well, I am a poor hand to remember dates. About all I remember is, she came in and told me about it. I remember that very definitely. I remember I talked with her and it was in the spring. Q. All you know about it is what this woman told you—that is true, is it? A. Oh, yes. Q. Now, did Mrs. Johnson, or any police officers come to your home and talk to this girl, while you were there? A. Yes, but I did not know that, at the time. It just happened I was not at home, but they did come with Mrs. Johnson. Q. When did they come there? A. What did you say? Q. When did they come there? Mr. Gilmer: Objected to as improper cross-examination. The Court: Sustained. Mr. Justus: Exception. That is all. Re-direct examination' by Mr. Gilmer: Q. Mrs. Hagler, if it might be of assistance to you in refreshing your memory, do you recall the occasion that you were going to give some kind of a party, or luncheon, that this was reported to you? Mr. Justus: Objected to as incompetent, irrelevant and immaterial, leading and not proper rebuttal. The Court: The question is very leading. Mr Gilmer: It is purely for the purpose of assisting this lady in recalling more definitely. The Witness: It was about the last of April. The Court: The objection will be sustained. The question is too leading. Q. Do you remember giving a party sometime the last of April? A. No. Mr. Justus: Objected to as incom-

petent, irrelevant and immaterial and not proper rebuttal. Mr. Gilmer: Oh, that is all. Witness excused. Mr. Justus: The defendant now moves the Court to strike from the record all the testimony of this witness for the reason that it is hearsay, incompetent, irrelevant and immaterial and not proper rebuttal. The Court: Overruled. Mr. Justus: Exception."

From an examination of the authorities, it is clear that this evidence was clearly inadmissible. The conversation of the prosecutrix with Mrs. Hagler was after she had been brought back to the city by the party who she claimed had assaulted her. Under the authorities in this state it could not possibly be held to be a part of the res gestae. Price v. State, 1 Okla. Cr. 358, 98 P. 447; Cook v. State, 27 Okla. Cr. 215, 226 P. 595; Warren v. State, 24 Okla. Cr. 6, 215 P. 635; Dodd v. State, 29 Okla. Cr. 311, 233 P. 503; Smith v. Territory, 11 Okla. 669, 69 P. 805.

The time intervening would give one an opportunity to make such statement by deliberation, and these statements would be almost impossible to refute. Under the law, that part of the evidence in which she reported to Mrs. Hagler of an assault made upon her was admissible. If Mrs. Hagler had seen her and had examined her, she could further testify to her personal appearance as to whether or not there were any bruises on her person or body, or whether or not her clothes had been torn, and in what condition they were, but this is as far as the state could go. The permitting of Mrs. Hagler to testify in detail to the conversation which she had with the prosecutrix is clearly inadmissible. This conversation contained two statements that were very damaging to the defendant, and were no doubt strong factors in causing the jury to return a verdict of guilty. The statements were that the prosecutrix, Alma Floyd, told her that the

party who assaulted her had false teeth and had lost them at the time of the assault, and the further statement that the prosecutrix had told her the license number of the car, and had told her that her clothes were ruined. These statements were made by the prosecutrix, not in the presence of the defendant nor as a part of the res gestae, but were clearly hearsay, and if permitted to stand could by the jury be considered as corroborating her testimony.

The general rule is that the evidence of a witness cannot be corroborated or confirmed by proof that the witness stated the same facts testified to in court on some occasion when not under oath, and not in the presence of the defendant. These statements are excluded as hearsay. However, in rape cases there is an exception to this rule. The exception is that in this character of cases, the state may show by the testimony of other witnesses that the prosecutrix made complaint of the outrage soon after its commission. The reason for this exception is for the purpose of corroborating the prosecutrix when an attempt has been made to impeach her upon the question of the assault as testified to by her. It is also based upon the fact that if she does not immediately report the assault, this will be considered as evidence of the fact that she has not been assaulted, and thus discredit her. The decisions of the courts are practically unanimous that immediately following the commission of the offense, the fact that the prosecutrix made complaint of the assault is admissible, and the further fact as to the physical appearance of the prosecutrix and the condition of her clothing.

But there is a conflict of the authorities upon the proposition of the admission in evidence of the detailed statement or conversation of the prosecutrix to a third party. If it could be said to be a part of the res gestae

it is then admissible, but if not it becomes a serious question as to whether it is admissible, and if it is admitted, whether or not it is prejudicial to the rights of a defendant to the extent of justifying a reversal of his case. Each case to some extent must stand on the facts of that particular case. The courts very generally recognize a difference between the statement made by a young, inexperienced child, and one made by an adult who by reason of her knowledge and experience would know better how to fabricate or falsify a statement to the end that their evidence would thus be corroborated.

As stated in 44 Am. Jur. p. 953, § 84:

"* * * but the rule supported by the weight of authority is that the prosecutrix may testify merely to the fact of making a complaint and not as to the details. On the direct examination the usual practice is merely to ask whether she made complaint that such an outrage had been perpetrated upon her, and to receive in answer only a simple yes or no. And a person to whom complaint has been made by the victim of a rape, when placed on the witness stand, cannot be permitted to repeat all the details of the outrage, as reported to the witness."

The author then gives as a reason for this rule:

"The reason of the rule admitting the fact that complaint was made, and excluding the complaint itself, is founded, aside from its being hearsay, by those courts which do not treat it as part of the res gestae, upon the danger of allowing a designing female to corroborate her testimony by statements made by herself to third persons, and the difficulty of disproving the principal fact by the accused. In applying this rule, it has been held that while the witness should not be permitted to detail the particulars of the complaint, enough may be given in evidence to show the nature of the complaint, even though it involves to some extent the particulars thereof, and that the rule is not violated by evidence as to the time and place where the complaint was made, the circum-

stances under which it was made, the person to whom made, the condition of the victim when making the complaint, the conduct of the prosecutrix at the time she made complaint, and that she exhibited, if such was the fact, marks of violence and other like indications, as confirmatory to her testimony."

Applying the above statements of law, which we think are correct, to the evidence in the instant case, we find that prosecutrix here was a mature woman who had been married and was divorced. The statement which she made to Mrs. Hagler was made after she returned to Tulsa and quite some time after the assault was made. She had plenty of time to think out a falsification and fabrication, if she desired to do so. As above stated, it would not fall within the class of cases coming within the rule as a part of the res gestae.

Mrs. Hagler did not testify relative to the personal appearance of the prosecutrix as to cuts, bruises or the condition of her clothing. Her testimony was almost exclusively of statements made to her by the prosecutrix. Permitting her to relate the detailed conversation which she had with the prosecutrix in which prosecutrix told her that at the time of the assault defendant's false teeth became loose; that prosecutrix told her the license number of the car and the conditions under which she had obtained the same; and told her that her clothes had been torn and ruined, were hearsay statements which if permitted to go to the jury for the purpose of corroboration of her evidence could not be otherwise than prejudicial to the rights of the defendant, under the circumstances in this case.

This court had this question under consideration in the case of Taylor v. State, 61 Okla. Cr. 110, 65 P. 2d 1233, 1235. Judge Davenport, Presiding Judge, wrote the opinion, and stated:

"In Bouie v. State, 9 Okla. Cr. 345, 131 P. 953, 955, this court in the body of the opinion said:

" 'It is admissible to show by the testimony of the prosecutrix or other witnesses, in corroboration of her testimony, that complaint was made shortly after the commission of the alleged offense, and when, where, and to whom it was made, but by the weight of authority the evidence must be confined to the bare fact that complaint was made; the details or particulars of the complaint not being admissible as substantive testimony unless the statements are part of the res gestae.'

"In Chastain v. State, 46 Okla. Cr. 123, 287 P. 826, this court in the first paragraph of the syllabus said:

" 'It is not possible to define the term res gestae by any exact definition which will fit all cases; the term, in a general way, may be defined as the circumstances, facts, and, declarations that grow out of the main fact, and shed light upon it, and tend to explain it, and made at a time so near, either prior or subsequent to the main act as to exclude the idea of deliberation or fabrication.'

"The testimony in this case is uncertain as to what time it is claimed by the state the prosecutrix told the witness Myrtle Hunter of the alleged sexual intercourse between the defendant and herself. As the testimony fails to show a definite date as to when this complaint was made, this court holds that the testimony presented by the state, by the witness Myrtle Hunter, is not a part of the res gestae.

"In State v. Hunter, 18 Wash. 670, 52 P. 247, 248, the Supreme Court of the state of Washington said:

" 'After a pretty thorough examination of the cases, we think the better rule is to restrict the evidence to the fact of complaint, and that anything beyond that is hearsay of the most dangerous character.' Citing many authorities.

"In People v. Scalamiero, 143 Cal. 343, 76 P. 1098, 1099, the California Supreme Court said:

" 'On a prosecution for assault with intent to commit rape, proof of the fact that prosecutrix made complaint may be given in evidence by the testimony of prosecutrix herself, or that of the persons to whom she made complaint, but the details of the complaint may not be shown.' State v. Aldrick, 97 Wash. 593, 166 P. 1130; People v. Avila, 50 Cal. App. 228, 194 P. 768.

"In State v. Hoskinson, 78 Kan. 183, 96 P. 138, the Supreme Court of Kansas, in considering a case where the facts are very similar to the case being considered by this court, in which the prosecutrix was a girl thirteen years of age who had made the complaint to some third parties who were permitted to relate the details of her story to the jury, the court in reversing the case in the second paragraph of the syllabus said:

" 'The rule admitting in evidence, in trials for rape, the complaints of the injured person concerning the alleged offense upon her, is ordinarily limited to the fact that such complaints were made; the details being excluded. Such testimony is admitted upon the theory that, if she made no complaint of such an outrage, her silence might be construed as evidence that it had not occurred.'

"In the case of State v. Fowler, 13 Idaho 317, 89 P. 757, the Supreme Court of Idaho said:

"In a prosecution for rape, the state may prove by the prosecutrix and other witnesses that she made complaint soon after the commission of the alleged act, and show when, where, and to whom, and under what circumstances she made complaint, and her appearance, demeanor, and physical condition at the time she made complaint. But the details of the conversations * * * may not be given by the witness.'

"In Dickens v. People, 60 Colo. 141, 152 P. 909, the Supreme Court of Colorado said:

" 'Complaint of a victim of an assault with intent to rape is admissible in evidence only as to the bare fact of complaint, and the details thereof are not admissible.' "

And we also considered this question in the case of Herren v. State, 75 Okla. Cr. 251, 130 P. 2d 325, 331, where it is said:

"In the first place, this testimony of the sheriff was inadmissible because it was hearsay. The state cannot bolster its case by having persons present when a party sees certain goods which he claims were stolen from him and having him there state in the presence of the other parties that those are the stolen goods for the purpose of making witnesses of the parties who heard the statement."

From what has been stated, we are of the opinion that the evidence of Mrs. Don Hagler was inadmissible, and that the same was prejudicial to the rights of the defendant, and that by reason thereof this case should be reversed.

We have given a detailed statement of the evidence offered for the reason that in the brief of defendant, and by the oral argument, it is strenuously insisted that the evidence in the case is insufficient to sustain the judgment and sentence, and that by reason of the testimony of the prosecutrix, which is so overwhelmingly overcome by the evidence offered by the defendant, and the improbability of the same, that it becomes necessary under the law as announced by this court that her testimony should be corroborated and that the evidence does not present such corroboration.

This court has often announced in its decisions, that in a rape case it is not necessary in order to sustain the conviction that the evidence of the prosecutrix should be corroborated. Wines v. State, 7 Okla. Cr. 450, 124 P. 466; Morris v. State, 9 Okla. Cr. 241, 131 P. 731; Ferbrache v. State, 21 Okla. Cr. 256, 206 P. 617; Witt v. State, 29 Okla. Cr. 357, 233 P. 788; Dawes v. State, 34

Okla. Cr. 225, 246 P. 482; McLaurin v. State, 34 Okla. Cr. 324, 246 P. 669; Davidson v. State, 57 Okla. Cr. 188, 46 P. 2d 572, 573; Williams v. State, 61 Okla. Cr. 396, 68 P. 2d 530; Self v. State, 62 Okla. Cr. 208, 70 P. 2d 1083; Miller v. State, 65 Okla. Cr. 26, 82 P. 2d 317; Alcorn v. State, 70 Okla. Cr. 386, 106 P. 2d 838; Kilpatrick v. State, 75 Okla. Cr. 28, 128 P. 2d 246.

This rule is adhered to for the reason that, in many instances, it is almost impossible to corroborate the testimony of the prosecutrix, and this is especially true where she is a young child, but we have also often in these same cases announced as an exception to this rule, that where the evidence of the prosecutrix is improbable, contradictory, and not of that character which justifies its belief, or where she has been impeached, we will require that her evidence be corroborated. This exception is as well founded as the rule itself.

In the following cases judgments of conviction have been affirmed: Varner v. State, 69 Okla. Cr. 294, 102 P. 2d 615; Work v. State, 63 Okla. Cr. 433, 75 P. 2d 1161; Lane v. State, 48 Okla. Cr. 84, 289 P. 357; Malone v. State, 40 Okla. Cr. 102, 267 P. 486; Allen v. State, 35 Okla. Cr. 64, 248 P. 655; Day v. State, 29 Okla. Cr. 49, 232 P. 122; Harris v. State, 27 Okla. Cr. 405, 228 P. 525; Johnson v. State, 5 Okla. Cr. 1, 112 P. 760.

This rule has its foundation in a principle announced by Lord Hale, which is quoted in many of the cases cited. It is:

"It must be remembered that this is an accusation easily to be made and hard to be proved and harder to be defended by the party accused, though ever so innocent."

This statement is just as true today as it was when made. A reading of the cases above cited from this court

will amply illustrate its wise application to the facts of many individual cases. The rule announced by this court must be tested by the facts of each individual case. In many cases the evidence of the prosecutrix herself is so contradictory, and her evidence is of such a nature, that common justice demands that the state offer evidence to corroborate the same. In other instances, the question arises whether, under all the evidence offered in the case, there is such a doubt arises as to the guilt of the defendant, that common justice demands the whole of the record be examined in order to properly determine whether it justifies the sustaining of the judgment and sentence rendered against the defendant.

From a review of the record, and the cases decided by this court and heretofore cited, we examine the record as a whole, not from a technical standpoint as to whether defendant was properly protected by a technical objection as to each question that was asked, or to each act that was done in the trial of this case, but that a complete, impartial survey be made thereof to ascertain if there is sufficient evidence in this record to corroborate the prosecutrix. Was she impeached by the evidence of disinterested witnesses, and did the defendant have a fair and impartial trial as was guaranteed him by the Constitution and laws of this state?

We have heretofore given the testimony of Mrs. Hagler, and have come to the conclusion that this case should be reversed by reason thereof.

From an examination of the record, we find several outstanding occurrences. As to the question of corroboration of prosecutrix, when the statements which she herself made are eliminated, there is very little evidence which corroborates her testimony, and when it is taken into consideration the numerous instances in which she

is impeached by other witnesses, it can hardly be said that her evidence is corroborated to that extent demanded by the law and as announced by the many authorities heretofore cited.

The fact that this offense occurred on the night of April 28, 1941, and she did not report to the police department until on Thursday, May 1, 1941, and the fact that she testified that the defendant had not only assaulted her but had knocked her down and beat her in the face, yet no witnesses testified to seeing any scars or bruises on her at any time; the position in which she testifies she was placed at the time of the assault; the fact that she testified that her clothes were torn and ruined, yet they were never seen by anyone, and the women police officers did not even take the time to examine them, or to keep them so they could be introduced in evidence to corroborate her testimony, is strange indeed.

When one reads this record, the first question that presents itself is, why was this defendant convicted? To properly answer this question, as we have heretofore stated, one must carefully consider the whole of the record, and not a single part thereof. Counsel for the state and the defendant have both referred to matters that are not in the record. In their briefs they have asked the court to examine these records, and we therefore have the right to make reference thereto, not for the purpose of deciding this case, which will only be decided on its own merits, but for the purpose of throwing light upon the whole issue.

Prior to the trial of this defendant on this charge, he was charged in the district court of Tulsa county with another serious crime, and that case is now on appeal to this court. The date of that crime was alleged to be April 1, 1941, and prior to the date here charged. This case, it

will be noted, was first tried. It is clear that under the law defendant was entitled to be tried in this case upon the charges here preferred, and without reference to the other charges upon which defendant had not been tried. When the other case was called for trial, a change of venue was granted from Tulsa county, by the trial court, solely upon the ground of newspaper articles appearing in the Tulsa papers with reference to this and other charges in which the defendant was charged, and other serious crimes that had been committed in Tulsa county. It is clearly revealed by the record in this case by the manner of questioning the witnesses, that every effort was made to get these facts before the jury. We here give excerpts from the record which justifies this statement.

When the defendant was being cross-examined by the county attorney, he was asked:

"Q. I will ask you if you did not have that gun, or one similar to that gun, on the evening of April 1st, 1941. A. No, sir. Q. Do you know Hartsill Brown? A. Who? Q. Hartsill Brown. Mr. Justus: Objected to as incompetent, irrelevant and immaterial and not proper cross-examination. The Court: The objection will be overruled. Mr. Justus: Exception. A. No, sir. By Mr. McDonald: Q. I will ask you now, again, do you know Hartsill Brown? A. No, sir. Q. Have you ever heard of him? A. No, sir. Q. I will ask you if upon the night of April 1, 1941, you did not force Hartsill Brown into your automobile at the point of a pistol? A. No, sir. Q. Either a toy pistol or other gun? Mr. Justus: Objected to as incompetent, irrelevant, and immaterial and not proper cross-examination. The Court: Objection sustained. Mr. Justus: Now, the defendant moves your honor to admonish the jury not to consider the question and further asks the court to declare a mistrial in this case. The Court: The jury will be admonished not to

consider the question. The motion for a mistrial is overruled. Mr. Justus: Exception."

Hartsill Brown was the prosecuting witness in a sodomy case pending against defendant at the time of the trial of this case.

At another time the witness Beulah Johnson, a policewoman, was on the stand and she was asked:

"Q. Will you tell the court and jury why it was, complaint having been made May 1st, and no arrest of this man having been made until in September? Mr. Justus: Objected to as incompetent, irrelevant and immaterial. The Court: Overruled. Mr. Justus: Exception. A. Because this was a negro girl making a charge against a white man, we proceeded very, very cautiously, and until several other girls— Mr. Justus. Objected to as prejudicial. The Court: Sustained. Mr. Justus: And I move the answer be stricken and the jury admonished not to consider the same. The Court: Sustained, and the jury is instructed not to consider the same."

When the witness D. H. Harrison, a material witness for the defendant, was being cross-examined, a series of questions were asked him with reference to why he had not reported what he knew about this case to the county attorney and sheriff, and why he had not come to their office to see them. Without repeating the questions, we will state that they were of such character as to leave the impression with the jury that this witness violated his duty and possibly the law in not reporting what he intended to testify to the county attorney or sheriff. From an examination of the testimony of this witness we can see no reason, nor do we know of any law, that would require him to report to the county attorney or sheriff what his testimony would be. It was the duty of the county attorney to make such investigation as he saw fit of the evidence in this case. This action alone

456

might not be sufficient to reverse this case, but it was highly improper and could not do otherwise than discredit the testimony of this witness with the jury. In the cross-examination this question was asked him:

"Q. As a matter of fact, you understood he was charged with another assault on another person on the 26th day of April, and you knew it. Mr. Justus: Objected to as incompetent, irrelevant and immaterial and prejudicial. The Court: Overruled. A. No."

There is nothing in the record to justify the asking of this question as to a charge of an assault upon any other person on the 26th day of April. There was some evidence that prosecutrix had at first stated that this charge was on the 26th, but had changed to the date of the 28th. There is nothing in the record to justify the asking of this question as to an assault upon some other person by defendant on the 26th of April. The asking of the same was clearly prejudicial.

Testimony was offered by the state as to the finding of a toy pistol in the Chevrolet car owned by the defendant some months after it was sold to another party. Also, to the finding of a toy pistol in the car of defendant which he was driving at the time of his arrest, September 25, 1941. There was no evidence of any witness that either of these toy pistols was used by defendant in the perpetration of any crime. The prosecutrix testified that it was a dark pistol which he held in his hand at the time he assaulted her, and was not the toy pistol. We do not know what effect the introduction of one of these pistols before the jury had, but its introduction and exhibition before the jury clearly was inadmissible. The statement which defendant made while upon the witness stand in explanation of it being in the car was entirely reasonable.

In the case of Alcorn v. State, supra [70 Okla. Cr. 386, 106 P. 2d 845], this court, in an opinion delivered by Doyle, Presiding Judge, said:

"In the instant case the testimony of the prosecutrix should be considered in the light of all the attending circumstances, and we think they cast so much doubt upon the credibility of her testimony that the conviction should not be permitted to stand. Her testimony is inconsistent and contradictory.

"It is always legitimate to consider whether the subsequent conduct of the prosecutrix is the usual and natural conduct of an outraged woman as bearing upon the credibility of her direct testimony, and it appears that the prosecutrix made no complaint of injury or mistreatment on the part of the defendant to her grandparents that morning.

The charge of illicit sexual relations is easily made, and often inspired by malice, hidden motives, or revenge, and evidence to establish the same may be easily fabricated and hard to disprove. As has been well stated by an able jurist: 'There is no class of prosecution attended with so much danger, or which affords so ample an opportunity for the free play of malice and private vengeance. In such cases the accused is almost defenseless.'

"The state only demands the punishment of a citizen when his guilt has been clearly established according to the forms and rules of law, prescribed for ascertaining his guilt. It is not to shield the guilty, but to protect the innocent, that the courts are steadfast in upholding the forms and rules of law by which it may be lawfully determined who are guilty."

In Second Bishop, New Criminal Procedure, § 962, and 963, it is said:

"The real facts in a case of alleged rape are commonly known only to the defendant and the complaining woman. And she may be honest or dishonest, free from guile or a crafty plotter against him, moved by a sense

of justice or by a desire to conceal the shame of having voluntarily surrendered her virtue. If she speaks truth, no completely satisfactory confirmation of her testimony can often be had; if falsehood, nothing is so difficult as for the defendant to make the falsity appear. His temptation to clear himself by foul means, where he cannot by fair, is very great; hers may be, but it is not necessarily, almost as strong to convict him by perjury where the truth will not avail. Therefore it cannot be otherwise than that convictions will sometimes be wrongly had, and sometimes the guilty will go free, and there should be a conviction only on the clearest and most convincing proofs. In consequence of this, the law not only permits the ordinary tests to be applied to the complaining witness, but it has some special ones not permissible in other cases, * * *"

"On ordinary grounds, anything which the woman said or did of the res gestae of the ravishment will be admissible in evidence. And there is considerable room for strengthening her testimony in this way, especially where she exhibits marks of violence in connection with expressions indicative of her physical condition. But aside from and beyond this it is competent to show by her, of by others, or both, that after the alleged rape, especially recently after, she complained of it to suitable persons, and exhibited, if such was the fact, marks of violence and other like indications; as confirmatory of her sworn testimony. It is of special practical importance that the complaint was recent, and explanations of any delay are competent. But the doctrine in strict law appears to be that delays, especially if not great, only weaken the effect of her evidence with the jury."

We have given this case most careful consideration. In applying the rule announced by Mr. Bishop that "there should be a conviction only on the clearest and most convincing proofs" in cases of this character, we have come to the conclusion that the judgment and sentence of the Tulsa county district court should be reversed and re-

manded, and unless the county attorney has other evidence which he deems sufficient to retry this defendant, that he be discharged insofar, as this charge is concerned. It is so ordered.

JONES, P. J., concurs in part and dissents in part. DOYLE, J., concurs.

JONES, P. J. (concurring in part and dissenting in part): I agree that the errors discussed in the opinion of Judge BAREFOOT are of a substantial nature and such as require a reversal of the judgment of conviction. However, it is my opinion that when this inadmissible evidence is excluded from consideration there still remains sufficient evidence to require the submission of the case to a jury.

I, therefore, respectfully dissent to that part of the opinion which directs the dismissal of this case unless the county attorney has other evidence which he deems sufficient to justify retrying the defendant.